## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **LESLIE SCOTT, TAL BECKER,**<br>**Individually and on behalf of others**<br>**similarly situated** | ) <br> ) <br> ) <br> ) | |
| **PLAINTIFFs,** | ) <br> ) | **CIVIL ACTION NO. _____** |
| **v.** | ) <br> ) | |
| **RVSHARE LLC,** | ) <br> ) | |
| **DEFENDANT.** | ) <br> ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs LESLIE SCOTT and TAL BECKER, individually and on behalf of others similarly situated, and for their causes of action against Defendant RVSHARE LLC, state as follows:

### THE PARTIES

1)      Plaintiff SCOTT is a citizen and resident of Dickson, Dickson County, Tennessee.

2)      Plaintiff BECKER is a citizen and resident of Fort Lauderdale, Broward County, Florida.

3)      Defendant RVSHARE LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business in Akron, Ohio. RVSHARE provides an online rental marketplace wherein consumers can rent recreational vehicles such as diesel pushers, camper vans, motorhomes, and travel trailers. RVSHARE serves consumers in every state, including Tennessee and Florida, and maintains a website at RVshare.com.

## JURISDICTION AND VENUE

4)      This Court has original jurisdiction under Section and 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000.00 and is between citizens of different states. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because the number of proposed Class members exceeds 100; the amount in controversy exceeds the sum or value of $5 million, exclusive of interests and costs; and Plaintiffs and other Class members are citizens of a different state from Defendant.

5)      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6)      This Court may exercise personal jurisdiction over Defendant under Fed. R. Civ. P. 4(k)(1) and Tenn. Code Ann. §§ 20-2-214(a)(1)-(2), 20-2-223(a)(1)-(4), and 20-2-225 (providing that a court may exercise jurisdiction "[o]n any basis not inconsistent with the constitution of this state or of the United States"). Defendant RVSHARE solicits and transacts business in Tennessee. It advertises and facilitates the rental of recreational vehicles (RVs) to Tennessee residents and to persons traveling to Tennessee. It promotes locations and events in Tennessee as RV travel destinations. It has listed hundreds of RVs for rent in Tennessee. It derives substantial revenue from transacting business in Tennessee.

## INTRODUCTION

7)      RVSHARE markets itself as "the world's first and largest peer-to-peer RV rental marketplace, serving more than 60,000 RV owners across the US."[1] The landing page of its

---

[1]   RVshare, *About RVshare, The World's First & Largest RV Rental Marketplace*, https://rvshare.com/about (last visited May 18, 2021).

website boasts of a "Worry-Free Rental Guarantee[:] Guaranteed protection for your trip, every step of the way."[2]

8) Plaintiffs are among thousands of renters who have been deceived, misled, scammed, and/or shortchanged by RVSHARE. Plaintiffs bring this proposed class action to stop RVSHARE's unlawful conduct, to reimburse renters for unjust losses, to compel RVSHARE to make a full accounting to its renters, and to require RVSHARE to compensate renters for corporate profits unjustly earned at their expense.

9) This is a proposed class action by direct renters of RVs against Defendant RVSHARE, for false advertising, unfair and deceptive trade practices, and violation of various states' consumer protection laws.

10) This case alleges false advertising and unfair and deceptive trade practices by RVSHARE. Defendant RVSHARE engages in the practice of unreasonably and illegally holding RV renters' fees and deposits in a scheme to defraud the renters whenever claims or disputes arise from individual rentals. As a result of RVSHARE's unlawful and deceptive business practices, Plaintiffs and members of the below-defined Class and Sub-Classes have incurred losses including, but not limited to, cash deposits, fees, charges, RV rental insurance, and improper/illicit claims handling fees. The financial injuries suffered by Plaintiffs are those that false advertising, unfair and deceptive trade practices and consumer protection laws are designed to prevent.

## CLASS ACTION ALLEGATIONS

11) Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class, pursuant to Fed. R. Civ. P. 23(a), (b)(1),

---

[2] RVshare, *RV Rentals - Direct from Local Owners | #1 RV Rental Site*, https://rvshare.com (last visited May 18, 2021).

100486621.1

(b)(2), and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

12) The Class and Sub-Classes are defined as:

    (a)    <u>Nationwide Class</u>:

        i.    All individuals in the United States who rented RVs through RVSHARE;

        ii.    All individuals in the United States who rented an RV through RVSHARE and lost their deposit (or portions thereof) through a deceptive claims process overseen and adjudicated by RVSHARE;

        iii.    All individuals in the United States who rented an RV through RVSHARE who purchased insurance as part of that rental; and

        iv.    All individuals in the United States who rented an RV through RVSHARE who submitted a claim or had a claim made against them through RVSHARE's claims process.

    (b)    <u>Tennessee Sub-Class</u>: All members of the Nationwide Class who rented an RV through RVSHARE in the state of Tennessee, and were subjected to deceptive and unfair trade practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq*.

    (c)    <u>Florida Sub-Class</u>: All members of the Nationwide Class who rented an RV through RVSHARE in the state of Florida, and were subjected to deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*.

100486621.1

(d)    <u>Other States Sub-Class</u>: All members of the Nationwide Class as set forth in paragraph (a), whose states' have consumer protection laws similar to the Tennessee Consumer Protection Act or the Florida Deceptive and Unfair Practices Act.

13)    Excluded from the Class are RVSHARE and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; and judicial officers and their immediate family members and associated court staff assigned to this case.

14)    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

15)    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Fed. R. Civ. P. 23.

### *Numerosity: Fed. R. Civ. P. 23(a)(1)*

16)    The members of the classes defined herein are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe there are not less than thousands of members of the Class. The precise number and identities of these Class members may be ascertained from RVSHARE's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice-dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

### *Commonality and Predominance: Fed. R. Civ. P. 23(a)(2) and 23(b)(3)*

17)    This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including, but not limited to:

(a)    Whether RVSHARE engaged in the misconduct alleged herein;

- 5 -

(b)     Whether RVSHARE's representations, omissions, and conduct were misleading or false as to any material fact;

(c)     Whether RVSHARE's representations and conduct were likely to deceive consumers as to the complete rental price;

(d)     Whether RVSHARE violated the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq.*;

(e)     Whether RVSHARE violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*;

(f)     Whether RVSHARE violated other states' consumer protection laws and statutes;

(g)     Whether RVSHARE used or employed deceptive, unfair, or unconscionable commercial practices in its RV rental services;

(h)     Whether the members of the Class have suffered damages or losses as a result of RVSHARE's conduct;

(i)     Whether the members of the Class have sustained losses and are entitled to damages as a result of RVSHARE's wrongdoing and, if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution.

### *Typicality: Fed. R. Civ. P. 23(a)(3)*

18)     Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and each Class member rented an RV through RVshare.com and were similarly injured through RVSHARE's wrongful conduct as alleged herein.

100486621.1

### *Adequacy: Fed. R. Civ. P. 23(a)(4)*

19)     Plaintiffs will fairly and adequately represent the interests of the Class because their interests do not conflict with the interests of other Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

### *Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)*

20)     RVSHARE has acted or refused to act on grounds generally applicable to Plaintiffs and other Class members, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Class as a whole.

### *Superiority: Fed. R. Civ. P. 23(b)(3)*

21)     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial harms suffered by Plaintiffs and Class members are relatively small in comparison to the burden and expense that would be required to litigate individual claims such that it would be impracticable for Class members to seek individual redress for Defendant's wrongful conduct.

22)     Individualized litigation would also undermine judicial economy and raise the prospect of inconsistent or contradictory judgments, increase the likelihood of delay, and generate additional expenses for all parties and the court system. The class action device, on the other hand, presents far fewer management challenges and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

100486621.1

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### *Defendant's Website RVshare.com*

23)    Defendant RVSHARE owns, operates, controls, or manages RVshare.com.

24)    Defendant RVSHARE derives revenue from the rental of RVs on RVshare.com.

25)    RV owners who wish to rent out their RVs can list their RVs through RVshare.com.

26)    Class members can search for and book RVs available for rent through RVshare.com.

27)    Defendant RVSHARE promotes its "[n]ationwide reach" and advertises that RVs are available for rent through RVshare.com in every state, plus the District of Columbia.

28)    RVshare.com invites RV owners to list their RV on the website and earn up to $40,000.00 per year renting their RV.[3]

### *Defendant's Misleading Claims on RVshare.com*

29)    Defendant's misleading representations on RVshare.com include, but are not limited to, the following:

(a)    RVshare.com repeatedly represents that renting through RVSHARE offers the consumer a "*worry-free rental guarantee*." (Emphasis added.)

(b)    RVshare.com repeatedly represents it "offer[s] the largest selection of *trusted* RV rentals in the country." (Emphasis added.)

(c)    RVshare.com repeatedly promises help to the renter if an RV is not as represented or if problems arise.

(d)    RVshare.com represents "*standard insurance coverage* is automatically included in a quote when booking an RV that is covered by RVSHARE Rental Insurance."

---

[3] RVshare, *How Much You Can Earn Listing Your RV*, https://rvshare.com/blog/listing-your-rv (last visited May 18, 2021).

100486621.1

(Emphasis added.) There is no explanation of whether the insurance is primary or secondary, and the consumer is not made aware of deductibles or the extent of coverage, nor is the consumer made aware their automobile insurance is primary, and any claims paid out by RVSHARE's insurance may result in subrogation as to the renter's automobile insurance.

(e)     RVshare.com repeatedly represents that in the event of a dispute between the owner and renter, RVSHARE will "act as a *neutral third party to settle* any dispute." However, the consumer is not made aware that RVSHARE in fact receives a "commission" of 25% in all dispute matters (10% paid from the RV owner and 15% paid from the renter). RVSHARE has a direct financial interest in all damages awarded.

(f)     RVshare.com, despite repeated representations of a "worry-free" rental, requires the RV renter to prove that damages were not caused by the RV renter, deceptively shifting the burden of persuasion to the RV renter. In other words, the renter is not properly put on notice that in the event of claimed damages, the RV renter will be required to prove a negative. This is despite the fact that the RV owner is given 72 hours to present a claim for damages, meaning damages can arise outside of the rental term.

(g)     Ultimately, there is a deceptive failure by RVSHARE to disclose to the RV renter that they are at a disadvantage in the rental agreement and that RVSHARE has a direct financial incentive to render decisions adverse to the RV renter, and in favor of the RV owner.

30)    RVshare.com invites prospective RV renters to "[b]ook your RV rental online with confidence through the secure RVSHARE payment system. We verify accounts and perform fraud checks to help keep your transactions safe."[4]

### *RVSHARE's Cancellation Policy*

31)    RVSHARE's cancellation policy is geared toward protecting the RV owner not the consumer renter.

32)    RVSHARE permits owners to decide which of three cancellation policies they will adhere to.[5]

33)    RVSHARE is very strict on its no refunds policy.

34)    Once a consumer Class member is within 30 days of their trip, there is no refund available. If a renter chooses not to proceed with an RV rental, they will lose everything paid, regardless of the circumstances.

35)    RVSHARE does not offer any flexibility to its refund policy, even if an RV is in terrible condition, unsafe, or not as advertised.

36)    RVSHARE does not provide an option to cancel an RV prior to renting.

37)    RVshare.com does not offer any means for renters to dispute whether an RV is unsafe, not as advertised, or broken.

---

[4] RVshare, *RV Rentals - Direct from Local Owners | #1 RV Rental Site*, https://rvshare.com (last visited May 18, 2021).

[5] "Flexible: Renter may receive a full refund of money minus the RVshare service fee collected up to 30 days before rental, 50% refund of money minus the RVshare service fee collected within 30 days of rental. Standard: Renter may receive a full refund of money minus the RVshare service fee collected up to 30 days before rental, 50% refund of money minus the RVshare service fee collected within 30 - 14 days of rental, no refund within 14 days of rental. Strict: Renter may receive a full refund of money minus the RVshare service fee collected up to 30 days before rental, no refund within 30 days of rental." RVshare, *What Are the Cancellation Policies I Can Choose From?,* https://help-rvshare.force.com/s/article/what-are-the-cancellation-policies-I-can-choose-from (last visited May 18, 2021)**.**

100486621.1

38)     A renter has no recourse if the RV provided is different from the RV listed or described on RVshare.com. Essentially, an owner can post pictures of a luxury RV, then provide the renter with a broken-down RV. The renter of such a nightmare has no remedy.

*"Worry-Free Guarantee"*

39)     RVSHARE claims it offers a "Worry-Free Rental Guarantee[:] Guaranteed protection for your trip, every step of the way."[6]

40)     RVSHARE represents to consumer Class members that its RV rentals will be subject to a "worry-free guarantee" as claimed on its website.

41)     In reality, there is no guarantee. RVSHARE does not actually vet the owners or the RVs listed on its site. There is no way for a renter to dispute or contest a rental if it is not as advertised.

42)     Rental from RVSHARE is anything but "worry-free."

43)     RVSHARE's revenue is dependent on the availability of RVs for rent. Therefore, RVSHARE has a financial incentive to favor RV owners in the rental process at the expense of the consumer renter.

44)     RVSHARE purports to act as a neutral third-party in resolving all disputes between RV owners and consumer renters, but RVSHARE charges the consumer renter a fee for handling disputes between the consumer and the RV owner.

## FACTUAL ALLEGATIONS SPECIFIC TO THE PLAINTIFFS

45)     Plaintiffs SCOTT, individually and on behalf of Tennessee Sub-Class, and BECKER, individually and on behalf of Florida Sub-Class, for their complaint as against

---

[6] RVshare, *RV Rentals - Direct from Local Owners | #1 RV Rental Site*, https://rvshare.com (last visited May 18, 2021).

100486621.1

Defendant RVSHARE, incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

***Plaintiff Leslie Scott***

46)     In April 2020, SCOTT searched for an RV to rent on RVshare.com.

47)     RVshare.com listed hundreds of RVs for rent in Tennessee and actively targeted and pursued Tennessee citizens like SCOTT as customers.

48)     RVshare.com promotes locations and events in Tennessee as destinations for prospective RV renters.

49)     RVSHARE exploited the COVID-19 pandemic to promote RV rental as the best option for a safe vacation.

50)     On RVshare.com, SCOTT was presented with a 2014 Thor Motorcoach Outlaw RV available for rent.

51)     RVSHARE expressly and implicitly endorsed and represented the RV owner, "Alexander,"[7] as a trusted and reliable owner, with an RV that was properly inspected, maintained, and reasonably safe and suitable for use as a mobile home. RVSHARE even put a graphic next to Alexander's name to demonstrate he has been an owner since the company started.

52)     Through RVshare.com, RVSHARE notified Alexander of SCOTT's intent to rent his RV, for a family vacation.

53)     On or about April 2020, through RVshare.com, SCOTT rented the RV from June 17-27, 2020.

54)     As required by RVSHARE, SCOTT paid the rental fee and a $1,800.00 security deposit prior to June 17, 2020.

_____

[7] RVshare.com provides only the owner's first name.

- 12 -

55)     In RVshare.com's advertisement for Alexander's RV, it clearly stated the pick-up location for the RV was in Franklin, Tennessee. Once the RV was booked, Alexander unilaterally changed the pick-up location to a farther location at Murfreesboro, Tennessee. This was the first of many false advertisings that SCOTT encountered during this rental. Examples include, but were not limited to:

(a)     Pictures of a luxury RV showing it in good order, yet the delivered RV was battered, worn and unkempt, in opposition to the photos pictured on RVshare.com which SCOTT relied on.

(b)     Broken beds and false sleeping capacity not disclosed on RVshare.com;

(c)     Inadequate power and non-operational generator;

(d)     Broken leveling jacks;

(e)     No water line.

56)     SCOTT was not given an option to cancel her rental despite essential machinery being broken.

57)     SCOTT's family trip was a nightmare due to the false advertising of the RV on Rvshare.com. Not only did she not have running air conditioning during a sweltering summer, her husband was forced by the owner to perform manual labor (which required technical knowledge) on the defective RV, to repair broken levelling jacks necessary to protect his family from harm. The family was left with no water line or air conditioning, and was forced to change their vacation plans due to issues with the RV.

58)     SCOTT's difficult trip ended with the return of the RV to Alexander.

100486621.1

59)     Alexander completed a return form provided by RVSHARE, and indicated that no damage was found in his RV. He memorialized no dissatisfaction with the RV's condition upon its return.

60)     SCOTT called RVSHARE to attempt to take advantage of RVSHARE's advertised "Worry-Free Guarantee." An RVSHARE representative instructed SCOTT to fill out a dispute form within 72 hours, and that RVSHARE would serve as a neutral arbiter of any grievance between the renter and owner.

61)     SCOTT learned RVSHARE would email her a link to a dispute form. Nowhere on RVshare.com is a link to a dispute form to be submitted by dissatisfied Class members.

62)     SCOTT eventually received a link and disputed the full rental fee. In her dispute, SCOTT laid out a detailed timeline of her family's discoveries that her rented RV was vastly inferior to the one advertised by RVSHARE.

63)     Alexander was apparently notified of the dispute, and doctored the return form to add the initials "TBD." Alexander then filed his own claim against SCOTT.

64)     For the first time, Alexander alleged damages to the RV's microwave and exterior, and attempted to seek compensation for unauthorized generator use.

65)     RVSHARE then held the $1,800.00 security deposit posted by SCOTT.

66)     RVSHARE required SCOTT to purchase rental insurance from it. The policy was fraudulently presented as primary coverage, but was actually a secondary policy that provided no benefit.

67)     Despite a policy requiring owners to respond to a renter dispute within seven days, RVSHARE failed to immediately sustain SCOTT's dispute when Alexander did not respond, and instead allowed him to file a late reply.

- 14 -

68) SCOTT was never made aware that RVSHARE pays itself a "commission" of 25% of any damages it awards to an RV owner. RVSHARE did not disclose that it has a direct financial interest in all damages awarded to owners.

69) Despite SCOTT following RVSHARE's proscribed mechanism to resolve disputes, and with RVSHARE acting as the "neutral" arbiter despite having an undisclosed financial interest to rule in favor of the owner, RVSHARE ruled against SCOTT notwithstanding a lack of evidence of wrongdoing by SCOTT. RVSHARE additionally ignored overwhelming evidence presented by SCOTT, that showed wrongdoing by the owner.

70) A biased dispute resolution process left SCOTT owing money she should not have owed, which resulted in the wrongful taking of her security deposit. Adding insult to injury, she was ordered to pay an amount *in addition to* her forfeited security deposit.

71) The above illustrates that by design, RVSHARE's "worry-free guarantee" is overwhelmingly designed to stack the deck against renters, resulting in a financial windfall for RVSHARE.

### *Plaintiff Tal Becker*

Plaintiff BECKER incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

72) For a planned trip in October 2020, BECKER sought to rent an RV through RVshare.com, due to its advertised "worry-free rental guarantee," with "guaranteed protection for [her] trip."

73) On RVshare.com, BECKER was presented with a 2021 Puma RV available for rent. BECKER booked the RV for three days, and her credit card was charged $446.90 for the RV rental, and $75.60 for mandatory insurance. Three days before the trip, BECKER received an email

- 15 -

from RVSHARE indicating the mandatory $500.00 security deposit would be held on her credit card.

74)     On October 30, 2020, BECKER arrived at a campground to meet with the RV owners "Jeff and Candice" to conduct a walk-through assessment of the vehicle. No defects or deficiencies were apparent during this first inspection.

75)     The rental period was uneventful until its final day, when BECKER for the first time used the RV's glass-top stove.

76)     Ordinary use of the stove involved lifting the glass cover to access the burners. BECKER lifted the glass cover prior to use. She turned on the burner and began cooking an omelet; through no fault of BECKER, the glass cover instantly exploded. The explosion was so strong that it sent pieces of glass throughout the RV and onto BECKER herself.

77)     BECKER immediately called the owners to inform them of the glass explosion. Because the event was caused by ordinary use, BECKER theorized the stove may have been defective, and suggested the owners investigate whether there was a product recall.

78)     During this phone call, BECKER also notified the owners that she was prepared to conduct the walk-through inspection required by RVSHARE at the conclusion of a rental. The owners declined to conduct a final walk-through with BECKER, and instead instructed her to leave the RV at the campground where it was parked.

79)     As instructed, BECKER left the RV at the campground, notified the park of her departure, and returned home.

80)     Other than a shattered glass-top stove, the RV was returned in the same condition as when it was rented. An hour after leaving the RV, BECKER received a call from one of the owners, during which she was accused of "totaling" the RV due to flooding.

- 16 -

81)     According to the owner, the grill hatch was left unsecured, causing a rainstorm to completely flood the RV. However, despite requests from BECKER, the owner never provided any supporting pictures showing the loss was caused by BECKER, or the extent of the loss.

82)     On or about November 2, 2020, BECKER called RVSHARE to share her worry that the owners would pursue a fraudulent damage claim. Unlike SCOTT, who was permitted to preemptively dispute a prospective claim, RVSHARE told BECKER she could only institute a dispute once the owners made a claim. The representative gave assurances that RVSHARE would serve as a neutral arbiter to settle any dispute between BECKER and the owners.

83)     On or about November 4, 2020, RVSHARE charged BECKER's credit card $500.00 as a claim against her security deposit. This charge was made without allowing BECKER to dispute the owners' allegations, or to otherwise be heard. BECKER was informed a 15% "administrative fee" would be added to any damages; RVSHARE failed to disclose the ultimate "administrative" markup would be 25% of damages awarded against the renter.

84)     Upon receiving notice of the owners' claim from RVSHARE, BECKER disputed it and responded with a repair estimate of approximately $120.00 from the RV manufacturer, Puma, including labor. Additionally, BECKER submitted evidence that the cost to replace the entire range was only $393.09. The owners' claim relied upon an estimate provided by a local business unaffiliated with the RV manufacturer, for $613.45. Incredibly, RVSHARE relied upon the inflated, unsubstantiated third-party invoice, and imposed $613.45 in damages against BECKER. This, despite overwhelming evidence that the replacement cost was substantially less than that awarded against BECKER.

85)     The dispute process ended on November 24, 2020, when RVSHARE again stressed that it was a neutral third-party arbiter. RVSHARE provided notice of its final "settlement

decision." BECKER lost her entire security deposit, and was assessed additional damages of $113.45. None of the assessed damages were covered by the compulsory insurance policy BECKER purchased from RVSHARE.

86)     RVSHARE holds itself out as a neutral arbiter of claims, while failing to disclose the company's financial incentive to resolve claims in favor of the RV owners. Its biased dispute resolution process left BECKER owing money she should not have owed, which resulted in the wrongful taking of her security deposit.

## INAPPLICABILITY OF ARBITRATION CLAUSE

87)     Hidden on RVshare.com is a "Terms of Use" customer agreement purportedly executed by each consumer renter of RVs through RVSHARE, which includes an unenforceable arbitration cause. In order to search for RVs available on RVshare.com, a consumer renter must consent to RVSHARE's Terms and Conditions without an opportunity to review those Terms and Conditions prior to consent. More importantly, RVshare.com makes its "Terms of Use" available only via an inconspicuous hyperlink on its main page, but otherwise provides no notice to renters nor prompts them to take any affirmative action to assent to the arbitration clause buried in the last pages of its Terms and Conditions.

88)     In fact, the renter never signs nor in any way affirmatively acknowledges the "Terms of Use." Rather, by clicking on the "accept" button, the only thing the renter affirmatively represents and acknowledges is: "☑ I certify that I am at least 25 years old at the time of rental and I have a valid drivers license."

89)     Even though failure to read a contract does not relieve a party of its obligations under the contract, the onus must be on RVSHARE to put consumers on reasonable notice of the

terms to which they wish to bind consumers. Consumers cannot be expected to scour dense text within links to Terms and Conditions, to which they have no reason to suspect they will be bound.

90)     In fact, RVSHARE's system of obtaining reservations intentionally misleads the consumer through its deceptive booking process, hiding adverse information in fine print. That is, the consumer is not reasonably placed on notice regarding the "Terms of Use" and thus should not be bound by hidden and deceptive fine print.

## CLAIMS FOR RELIEF

### COUNT I: FRAUD
**(On Behalf of Plaintiffs and the Nationwide Class)**

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

91)     Plaintiffs assert this count on behalf of themselves and Class members.

92)     Through its website, to every Class member RVSHARE made affirmative misrepresentations, made incomplete representations, failed to disclose material facts, and purposefully concealed true facts regarding the entire RV rental and claim process.

93)     RVSHARE disseminated and perpetuated these misrepresentations, partial truths, and omissions through marketing and promotional materials targeting Plaintiffs and Class members, including but not limited to its "Worry-Free Guarantee" and:

   o Inadequate or non-existent vetting process of RVs listed, as alleged in paragraphs 38, 39, 40, and 41, *supra*;

   o Deceptive and misleading advertising, as alleged in paragraphs 29, 30, 38, 51, 55, and 72, *supra*;

   o Misrepresentation of insurance protection, as alleged in paragraphs 29(d), 66, and 73, *supra*;

- 19 -

o Misrepresentations regarding the level of assistance or support available to consumers like Plaintiffs and Class members, as alleged in paragraphs 29(c), 36, 37, 38, 56, 67, 82, and 84, *supra*.

94) RVSHARE made misrepresentations and partial truths to, and concealed the truth from, Plaintiffs and Class members about its knowing manipulation of the claims process, deposit requirements, RV insurance requirements, and quality of RVs, among other things, to-wit:

o Misrepresentations fraudulently representing RVSHARE as a "neutral" arbiter, as alleged in paragraphs 29(e), 60, 69, 82, and 86, *supra*;

o RVSHARE receives direct financial benefit in ruling in favor of the Owner, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

o RVSHARE deceptively places burden onto the renter in all disputes and routinely rules in favor of the Owner without an evidentiary basis to do so, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

o RVSHARE deceptively and wrongfully withholds security deposits without evidence of wrongdoing by the renter, as alleged in paragraphs 10, 57, 65, 70, 83, 85, and 86, *supra*.

95) RVSHARE emphasized, promoted and guaranteed a "worry-free" RV rental experience.

96) RVSHARE's representations, partial truths, omissions and concealments as alleged above were false and misleading. RVSHARE knew that its misrepresentations, partial truths, concealments and omissions were false and/or misleading, and purposefully took steps to conceal the truth to consumer renters.

97)     RVSHARE intended for Plaintiffs and Class members to rely on RVSHARE's misrepresentations and omissions. RVSHARE engaged in this course of conduct to sell its service to consumer renters like Plaintiffs and Class members for its own financial gain.

98)     RVSHARE's misrepresentations, incomplete representations, failure to disclose material facts, and omissions were material to Plaintiff's and Class members' decision to use RVSHARE's services in renting an RV through RVshare.com.

99)     The reliance by Plaintiffs and Class members on RVSHARE's representations, partial truths, omissions, and concealments was justified because said representations were made by RVSHARE, who was in a superior position to know the true facts.

100)    Plaintiffs and Class members could not have discovered the truth about RVSHARE's misrepresentations, partial truths, and omissions until they were financially committed and bound to an RV rental contract. By the time a consumer renter like Plaintiffs and Class members had an opportunity to inspect the RV they rented through RVshare.com, they were unable to contest or otherwise dispute the terms of the rental or obtain a refund on their rental charges.

101)    Plaintiff and Class members were injured by their reliance on RVSHARE's misrepresentations, partial-truths, and omissions.

102)    In making these false and misleading representations, partial truths, omissions and concealments, RVSHARE acted with oppression, fraud, and malice, and Plaintiffs and Class members are entitled to an award of punitive damages to deter RVSHARE and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of RVSHARE.

100486621.1

103) Plaintiff and Class members have been damaged because they incurred rental fees and insurance premiums, lost damage deposits, and were charged unnecessary dispute handling fees assessed by RVSHARE and, as a result of RVSHARE's deception, Plaintiff and Class members have been damaged in an amount to be proven at trial.

## COUNT II: FRAUD IN THE INDUCEMENT
### (On Behalf of Plaintiffs and the Nationwide Class)

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

104) RVSHARE made numerous misrepresentations of material fact to Plaintiffs and Class members in order to induce them to rent RVs through RVSHARE, including, but not limited to:

o Misrepresentations regarding an inadequate or non-existent vetting process of RVs listed, as alleged in paragraphs 38, 39, 40, and 41, *supra*;

o Deceptive and misleading advertising, as alleged in paragraphs 29, 30, 38, 51, 55, and 72, *supra*;

o Misrepresentation of insurance protection, as alleged in paragraphs 29(d), 66, and 73, *supra*;

o Misrepresentations regarding the level of assistance or support available to consumers like Plaintiffs and Class members, as alleged in paragraphs 29(c), 36, 37, 38, 56, 67, 82, and 84, *supra*.

o Misrepresentations fraudulently representing RVSHARE as a "neutral" arbiter, as alleged in paragraphs 29(e), 60, 69, 82, and 86, *supra*;

o RVSHARE deceptively conceals the fact that it receives direct financial benefit by ruling in favor of RV owners, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

o RVSHARE deceptively places burden onto the renter in all disputes, and routinely rules in favor of the RV owner without an evidentiary basis to do so, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

o RVSHARE deceptively and wrongfully withholds security deposits without evidence of wrongdoing by the renter, as alleged in paragraphs 10, 57, 65, 70, 83, 85, and 86, *supra*.

105) Plaintiffs were further assured they would have a "worry-free" rental experience by using RVSHARE's services.

106) RVSHARE knew or should have known the falsity of these statements. Through the number of complaints processed by RVSHARE by consumer renters, RVSHARE knew that its representations on RVshare.com were false.

107) RVSHARE intended that its false representations would induce Plaintiffs and Class members to rely and act. RVSHARE achieved its goal of having Plaintiffs and Class members incur substantial rental fees and insurance premiums, lost damage deposits unnecessary dispute handling fee all of which enriched the revenue and profits of RVSHARE.

108) Plaintiffs and Class members, through expenditure of time and money, suffered injury in justifiable reliance on RVSHARE's false representations and, as a result of RVSHARE's deception, have been damaged in an amount to be proven at trial.

### *COUNT III: PROMISSORY FRAUD*
### **(On Behalf of Plaintiffs and the Nationwide Class)**

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

109)    RVSHARE made numerous misrepresentations of material fact to Plaintiffs and Class members in order to induce them to rent RVs through RVSHARE, including, but not limited to:

- o   Misrepresentations regarding an inadequate or non-existent vetting process of RVs listed, as alleged in paragraphs 38, 39, 40, and 41, *supra*;

- o   Deceptive and misleading advertising, as alleged in paragraphs 29, 30, 38, 51, 55, and 72, *supra*;

- o   Misrepresentation of insurance protection, as alleged in paragraphs 29(d), 66, and 73, *supra*;

- o   Misrepresentations regarding the level of assistance or support available to consumers like Plaintiffs and Class members, as alleged in paragraphs 29(c), 36, 37, 38, 56, 67, 82, and 84, *supra*:

- o   Misrepresentations fraudulently representing RVSHARE as "neutral" arbiter, as alleged in paragraphs 29(e), 60, 69, 82, and 86, *supra*;

- o   RVSHARE deceptively conceals the fact that it receives direct financial benefit in ruling in favor of the Owner, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

- o   RVSHARE deceptively places burden onto the renter in all disputes and routinely rules in favor of the Owner without an evidentiary basis to do so, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

- 24 -

o RVSHARE deceptively and wrongfully withholds security deposits without evidence of wrongdoing by the renter, as alleged in paragraphs 10, 57, 65, 70, 83, 85, and 86, *supra*.

110) Plaintiffs were further assured they would have a "worry-free" rental experience by using RVSHARE's services.

111) At the time RVSHARE made these promises to Plaintiffs and Class members, it had no present intent to fulfill or carry out these promises and representations.

112) Plaintiff and Class members were injured by their reliance on RVSHARE's misrepresentations, partial-truths, and omissions.

113) In making these false and misleading representations, partial truths, omissions and concealments, RVSHARE acted with oppression, fraud, and malice, and Plaintiffs and Class members are entitled to an award of punitive damages to deter RVSHARE and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of RVSHARE.

114) RVSHARE knew or should have known the falsity of these statements. Through the number of complaints processed by RVSHARE by consumer renters, RVSHARE knew that its representations on RVshare.com were false.

115) RVSHARE intended that its false representations would induce Plaintiffs and Class members to rely and act. RVSHARE intended to, and achieved its goal of having Plaintiffs and Class members incur substantial rental fees and insurance premiums, lost damage deposits, and unnecessary dispute handling fees, all of which enriched the revenue and profits of RVSHARE.

116)     Plaintiffs and Class members, through expenditure of time and money, suffered injury in justifiable reliance on RVSHARE's false representations and, as a result of RVSHARE's deception, have been damaged in an amount to be proven at trial.

### *COUNT IV: INTENTIONAL MISREPRESENTATION*
**(On Behalf of Plaintiffs and the Nationwide Class)**

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

117)     RVSHARE made continual misrepresentations to Plaintiffs and Class members as alleged above, with the intent to mislead and conceal true facts from Plaintiffs and Class members.

118)     RVSHARE disseminated and perpetuated these misrepresentations, partial truths, and omissions through marketing and promotional materials targeting Plaintiffs and Class members, including but not limited to its "Worry-Free Guarantee" and:

- o   Inadequate or non-existent vetting process of RVs listed, as alleged in paragraphs 38, 39, 40, and 41, *supra*;

- o   Deceptive and misleading advertising, as alleged in paragraphs 29, 30, 38, 51, 55, and 72, *supra*;

- o   Misrepresentation of insurance protection, as alleged in paragraphs 29(d), 66, and 73, *supra*;

- o   Misrepresentations regarding the level of assistance or support available to consumers like Plaintiffs and Class members, as alleged in paragraphs 29(c), 36, 37, 38, 56, 67, 82, and 84, *supra*.

119)     RVSHARE made misrepresentations, partial truths to, and concealed the truth from, Plaintiffs and Class members about its knowing manipulation of the claims process, deposit requirements, RV insurance requirements, and quality of RVs, among other things, to-wit:

- 26 -

o   Misrepresentations fraudulently representing RVSHARE as a "neutral" arbiter, as alleged in paragraphs 29(e), 60, 69, 82, and 86, *supra*;

o   RVSHARE receives direct financial benefit in ruling in favor of the Owner, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

o   RVSHARE deceptively places burden onto the renter in all disputes and routinely rules in favor of the Owner without an evidentiary basis to do so, as alleged in paragraphs 29(g), 43, 69, 71, and 86, *supra*;

o   RVSHARE deceptively and wrongfully withholds security deposits without evidence of wrongdoing by the renter, as alleged in paragraphs 10, 57, 65, 70, 83, 85, and 86, *supra*.

120)    RVSHARE knew that these statements alleged above were false when they were made.

121)    Such representations were made with intent to induce Plaintiffs and Class members to act, in the form of entering a contract for the rental of an RV.

122)    Plaintiffs and Class members were damaged by their reliance on these misrepresentations by incurring rental fees and insurance premiums, lost damage deposits and unnecessary dispute handling fees assessed by RVSHARE and, as a result of RVSHARE's deception, Plaintiff and Class members have been damaged in an amount to be proven at trial.

### COUNT V: NEGLIGENT MISREPRESENTATION
### (On Behalf of Plaintiffs and the Nationwide Class)

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

123)    RVSHARE made continual misrepresentations to Plaintiffs and Class members as alleged above, and failed to exercise reasonable care and due diligence prior to making these

100486621.1

representations, partial truths, omissions and concealments regarding its services through RVshare.com.

124)    At the time RVSHARE made these representations, partial truths, omissions and concealments referred to above, RVSHARE had no reasonable basis for believing them to be true.

125)    RVSHARE made such representations recklessly, with intent to induce Plaintiffs and Class members to act, in the form of entering into a contract for the rental of an RV through RVshare.com.

126)    Plaintiffs and Class members were damaged by their reliance on these negligent misrepresentations by incurring rental fees and insurance premiums, lost damage deposits and unnecessary dispute handling fees assessed by RVSHARE and, as a result of RVSHARE's deception, Plaintiff and Class members have been damaged in an amount to be proven at trial.

### COUNT VI: VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
### (On Behalf of Plaintiff Scott)

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

127)    The wrongful acts of Defendant toward Plaintiff SCOTT constitute unfair, false, misleading, and deceptive trade practices under the T.C.P.A., Tenn. Code Ann. §§ 47-181-10, *et seq*.

128)    RVSHARE advertised and sold "goods" or "services" in "trade" and "commerce," as meant by Tenn. Code Ann. § 47-18-103.

129)    RVSHARE, operating in Tennessee via the Internet, engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale, rental and advertisement of goods and services in violation of Tenn. Code Ann. § 47-18-104, including, but not limited to, the following:

- 28 -

o   Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, in violation of Tenn. Code Ann. § 47-18-104(b)(7); and

o   Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services, in violation of Tenn. Code Ann. § 47-18-104(b)(21).

130)   RVSHARE's violations of the T.C.P.A. were willful and knowing.

131)   RVSHARE's misleading statements and false representations were designed to cause Plaintiff SCOTT to use RVSHARE's rental platform.

132)   RVSHARE's promises and representations were made knowing that such promises and representations could not be delivered, thereby constituting unfair and deceptive trade practices in violation of the T.C.P.A.

133)   RVSHARE's statements complained of herein were false and misleading, or had the capacity or tendency to mislead consumers, including Plaintiff SCOTT. Such violations of the T.C.P.A. entitle SCOTT to damages, treble damages, costs and attorneys' fees under the T.C.P.A.

### COUNT VII: VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
**(On behalf of Plaintiff Becker and the Florida Sub-Class)**

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

134) RVSHARE used and employed unconscionable commercial practices, deception, fraud, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts, in its marketing, distribution, sale and advertisement of its RV rental services, in violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*.

135) RVSHARE misrepresented, expressly and/or by implication, and intentionally omitted to state material facts regarding the reality that all renters of an RV through RVSHARE are charged a fee, where RVSHARE collects the fee and then acts as a third-party arbiter over claims wherein RVSHARE is also a party, and has a financial interest in the outcome of said claims.

136) RVSHARE's violations of the Florida Unfair and Deceptive Trade Practices Act were willful and knowing.

137) RVSHARE's violation of the above has resulted in damages to BECKER and other Class members from Florida.

### COUNT VIII: UNJUST ENRICHMENT / QUASI-CONTRACTUAL CLAIM FOR RESTITUTION
**(On Behalf of the Nationwide Class)**

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein, and do hereby allege as follows:

138) Plaintiffs assert this claim in the alternative to their legal claims and assert, for the purposes of this claim, that they lack an adequate remedy at law.

139) As the intended and expected result of its conscious wrongdoing, RVSHARE has profited and benefited from the Plaintiffs' and Class members' use of its services through RVshare.com.

- 30 -

140)     Plaintiffs and Class members have conferred a benefit upon RVSHARE, including payment of rental fees and insurance premiums, lost damage deposits and unnecessary dispute handling fees assessed by RVSHARE as a result of RVSHARE's deceptive trade practices.

141)     RVSHARE has received revenue from Plaintiffs and Class members because of its deceptive practices and has been unjustly enriched by way of its unlawful conduct. RVSHARE should be required to pay restitution of all monies by which it was unjustly enriched, and should suffer non-restitutionary disgorgement of profits in an amount deemed appropriate by this Court, in addition to whatever relief this Court deems just and proper to remedy RVSHARE's unjust enrichment.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs individually and on behalf of the other Class members, respectfully request that this Court enter judgment in their favor and against RVSHARE, as follows:

A.     That this Court certify this action as a class action, proper and maintainable pursuant to Fed. R. Civ. P. 23; declare that Plaintiffs are proper Class representatives; and appoint Plaintiffs' attorneys as Class Counsel;

B.     That this Court grant permanent injunctive relief to prohibit RVSHARE from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.     That this Court award Plaintiffs and other Class members compensatory, consequential, and general damages in an amount to be determined at trial;

D.     That this Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by RVSHARE as a result of its unlawful acts, omissions, and practices;

100486621.1

E.      That this Court award statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.      That the unlawful acts alleged in this Complaint be adjudged and decreed to be unfair and deceptive business acts and practices in violation of Tennessee and Florida consumer protection laws;

G.      That Plaintiffs be granted the declaratory relief sought herein;

H.      That this Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, including fees and expenses;

I.      That this Court award pre- and post-judgment interest at the maximum legal rate; and

J.      That this Court award punitive damages where appropriate and applicable.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

*/s/ James C. Bradshaw III*

James C. Bradshaw III, B.P.R. #13170
**WYATT, TARRANT & COMBS, LLP**
333 Commerce St., Suite 1050
Nashville, TN 37201
(615) 244-0020
jbradshaw@wyattfirm.com

*/s/ Cam F. Justice*

CAM F. JUSTICE, Florida Bar #119105
(*pro hac vice* admission pending)
Justice Law
8551 W. Sunrise Blvd., Suite 300
Plantation, FL 33322
(954) 515-5656
justicepleadings@justiceinjurylawyer.com
Counsel for Plaintiffs