**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | |
|---|---|
| **LESLIE SCOTT, TAL BECKER,** individually and on behalf of others similarly situated,<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**RVSHARE LLC**<br><br>    **Defendant.** | **Case No. 3:21-cv-00401**<br><br>**Judge William L. Campbell, Jr.**<br><br>**Magistrate Judge Alistar Newbern** |

**MEMORANDUM IN SUPPORT OF DEFENDANT RVSHARE LLC'S MOTION TO STAY PROCEEDINGS AND COMPEL INDIVIDUAL ARBITRATION**

Defendant RVshare LLC ("RVshare") submits this Memorandum of Law in support of its Motion to Stay Proceedings and Compel Individual Arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*

**INTRODUCTION**

Plaintiffs Leslie Scott ("Scott") and Tal Becker ("Becker" and collectively, "Plaintiffs") purport to bring a class action against RVshare based on alleged misrepresentations regarding RVshare's recreational vehicle ("RV") rental and claims process through its online platform, RVshare.com. While Plaintiffs' complaint (Doc. 1) lacks merit for a number of reasons, this Court is not the proper forum for resolution of their claims.

By renting RVs through RVshare.com, Plaintiffs agreed to RVshare's Terms of Service and the arbitration clause contained therein. Specifically, Plaintiffs and RVshare agreed to resolve "[a]ny and all claims . . . by binding arbitration, rather than in court." In addition, by accepting the Terms of Service, Plaintiffs and RVshare also agreed that they "are each waiving the right to participate as a plaintiff or class member in any purported class action lawsuit."

Courts, including the Middle District of Tennessee, "have consistently upheld these type of agreements, which are known as clickwrap agreements." *See, e.g., Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683 (M.D. Tenn. 2020) ("*Anderson I*"); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ("*Anderson II*"). A "clickwrap" agreement is commonly defined as "an agreement as to which a website user must manifest assent to the terms of the agreement by clicking on an icon." *See Anderson I*, 478 F. Supp. 3d at 697 n.4 (citing *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013)). Moreover, the FAA and U.S. Supreme Court precedent require that the parties' agreements to arbitrate be "rigorously enforced" as written and according to their terms. *See* 9 U.S.C. § 1, *et seq.*; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Accordingly, for these reasons and the reasons that follow, RVshare respectfully requests that this Court stay the instant litigation pending arbitration and compel Plaintiffs to arbitrate their claims on an individual basis.

## STATEMENT OF FACTS[1]

### A.    Plaintiffs agreed to RVshare's Terms of Service at least three times.

RVshare operates an online rental marketplace where consumers can rent RVs such as diesel pushers, camper vans, motorhomes, and travel trailers. (Compl. ¶ 3; Klenotic Dec. ¶ 5.) RVshare's website (RVshare.com) allows owners to list their RVs for rental use, and likewise allows renters to submit reservation requests directly to RV owners. (Klenotic Dec. ¶ 6.) Importantly, before renters can use RVshare's online platform, they must agree to RVshare's Terms of Service. (*Id.* ¶ 7.) Any user of RVshare's platform manifests his or her agreement to RVshare's Terms of Service at least three times.

---

[1] For purposes of this Motion only, the facts set forth herein are based on the well-pleaded allegations of the complaint (Doc. 1) and the Declaration of Thomas Klenotic ("Klenotic Dec.").

First, any person who attempts to rent an RV on RVshare.com must agree to the Terms of Service to begin the booking process. (Klenotic Dec. ¶¶ 8-10, Ex. A.) The "Begin your booking" page on RVshare's website contains the following language: "By clicking 'Agree & Continue', you are agreeing to the RVShare Terms of Service." (*Id.*) The phrase "Terms of Service" is hyperlinked, appearing in blue, bolded font and RVshare's Terms of Service can be accessed by clicking on this hyperlink. (*Id.*) As depicted in the image below, the placement of this language is directly adjacent to the "AGREE & CONTINUE" button:



Second, any renter must confirm his or her agreement to the Terms of Service before confirming payment details and committing to the booking. (Klenotic Dec. ¶¶ 11-14, Ex. B.) The "Confirm & Pay" page on RVshare's website contains the following language: "By clicking on 'Confirm & Pay', you agree…to the RVshare Terms of Service." (*Id.*) The phrase "RVshare Terms of Service" is hyperlinked, appearing in blue font and the Terms of Service can be accessed by clicking on that hyperlink. (*Id.*) As shown by the image below, this language referencing the Terms of Service appears immediately above the "Confirm & Pay" button:



Both Plaintiffs claim to have rented RVs using RVshare.com. (Compl. ¶¶ 8, 53, 72-73.) As such, Plaintiffs were required to, and did, complete the booking process described above. (Klenotic Dec. ¶¶ 16, 21.). RVshare's records show that Scott agreed to the Terms of Service by clicking "Agree & Continue" on the Begin your Booking screen on June 11, 2020, and also confirmed her agreement of the Terms of Service by clicking the "Confirm & Pay" button on the final screen that same day. (*Id.* ¶¶ 15-16, Exs. A-C.) Likewise, RVshare's records show that Becker agreed to the Terms of Service by clicking "Agree & Continue" on the Begin your Booking screen on October 13, 2020, and also confirmed her agreement of the Terms of Service by clicking the "Confirm & Pay" button on the final screen that same day. (*Id.* ¶¶ 15, 21, Exs. A-C.)

Third, before booking their RVs, both Plaintiffs agreed to certain rental terms, which incorporated the Terms of Service into their respective rental agreements and further directed Plaintiffs to "read this RV Rental Agreement & Optional Insurance Terms (along with the RVshare.com Terms of Service, the "Terms") carefully before consummating the rental of the RV." (Klenotic Dec. ¶¶ 15-17, 21-22; Exs. C, D, & F). Accordingly, Plaintiffs agreed to RVshare's Terms of Service at least three separate times in renting RVs through RVshare.com.

**B.     RVshare's Terms of Service require that disputes be resolved through individual arbitration.**

RVshare's Terms of Service are always available on its website. *See* Terms of Service, RVSHARE.COM, https://rvshare.com/terms-of-service (last visited July 12, 2021). The <u>first paragraph</u> of the Terms of Service instruct users to read the terms carefully because the terms limit RVshare's liability and require that disputes be resolved through arbitration:

> ***Please read these Terms of Service ("Agreement") carefully*** before using any of the Services (as that term is defined below) provided by RVshare, LLC ("Company", "we," or "us"). By using this website and its related mobile application (which we collectively refer to as the "website") and the Services of Company, you are agreeing to all the terms contained herein. If you do not agree to this Agreement, your only recourse is to not use the website or Services of Company. . . . ***Please read this Agreement carefully, as it contains important information about limitations of liability and resolution of disputes through arbitration rather than court***. (Klenotic Dec. ¶¶ 19, 24; Exs. E & G, p. 1. (emphasis added).)

Though RVshare has revised the Terms of Service from time to time, all versions applicable to Plaintiffs have required individual arbitration. (Klenotic Dec. ¶¶ 19-20, 24-25; Exs. E & G, § 23.) The Terms of Service make clear that while RVshare retains the right to amend the Terms of Service, the "Company's right to amend this Agreement, in whole or in part, does not apply to this 'Disputes; Arbitration' section. The version of this 'Arbitration' section in effect on the date you last accepted the Agreement controls." (*Id.*)

The Terms of Service that Scott agreed to on June 11, 2020, confirmed when she completed her booking, and then incorporated into her rental agreement, were the Terms of Service in effect as of June 9, 2020. (Klenotic Dec. ¶ 19, Ex. E.) And the Terms of Service that Becker agreed to on October 13, 2020, confirmed when she completed her booking, and then incorporated into her rental agreement, were the Terms of Service in effect as of September 18, 2020. (*Id*. ¶ 24, Ex. G.) For example, the arbitration agreement that Scott agreed to provides as follows:

> **Any and all claims will be resolved by binding arbitration, rather than in court, except you may assert claims on an individual basis in small claims court if they qualify. This includes any claims you assert against us, our subsidiaries, users or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any claims that arose before you accepted the terms of this Agreement regardless of whether prior versions of the Agreement required arbitration.**

> **Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Arbitration Consumer Rules (together, the "AAA Rules"). Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claims to Company. If we request arbitration against you, we will give you notice at the email address or street address you have provided.**

> **You and Company acknowledge and agree that we are each waiving the right to a trial by jury as to all arbitrable claims. You and Company acknowledge and agree that we are each waiving the right to participate as a plaintiff or class member in any purported class action lawsuit, class-wide arbitration, private attorney-general action, or any other representative proceeding as to all claims. Further, unless you and Company both otherwise agree in writing, the arbitrator may not consolidate more than one party's claims and may not otherwise preside over any form of any class or representative proceeding.** (*Id*. Ex. E, § 23 (emphasis in original).)

The June 9, 2020 Terms of Service that Scott agreed to and the September 18, 2020 Terms of Service that Becker agreed to are substantially the same and both iterations include the operative agreement to arbitrate and waive the right to pursue claims on behalf of a class. (Klenotic Dec. ¶¶ 19, 24, Exs. E & G, § 23.) Notwithstanding that Plaintiffs agreed to submit all claims to arbitration and not to pursue class relief, Plaintiffs filed this putative class action in breach of their agreements.

# ARGUMENT

## A.     The Federal Arbitration Act Requires Arbitration of Plaintiffs' Claims.

The FAA provides that written arbitration agreements, like the ones at issue in this case, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "embodies the national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and requires that courts "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co.*, 570 U.S. at 233 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "To enforce this dictate, the [FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3, 4).

When considering motions to stay proceedings and compel arbitration, the Sixth Circuit applies the following four-part test:

> (1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration.

*Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014); *Anderson I*, 478 F. Supp. 3d at 691. The Court must examine the language of the parties' agreement to arbitrate "in light of the strong federal policy in favor of arbitration" and resolve "[a]ny doubts regarding arbitrability . . . in favor of arbitration." *Anderson I*, 478 F. Supp. 3d at 691 (citing *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 392 (6th Cir. 2003)); *see also Javitch,* 315 F.3d at 624 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or a . . . defense to arbitrability.").

Where, as here, "a party establishes the existence of a valid agreement to arbitrate, the district court must grant the party's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Bright v. Brookdale Senior Living, Inc.*, No. 3:19-cv-00374, 2020 WL 1676889, at *2 (M.D. Tenn. April 6, 2020) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)); *see also Asa v. Verizon Commc'ns, Inc.*, No. 1:17-cv-256, 2017 WL 5894543, at *3 (E.D. Tenn. Nov. 29, 2017) ("If a valid arbitration agreement governs a claim, courts must compel arbitration" under 9 U.S.C. §§ 3, 4).

Application of the Sixth Circuit's four-part test to the facts in this case reveals that the Court should stay these proceedings and compel individual arbitration of Plaintiffs' claims.

### 1.    Plaintiffs agreed to arbitrate their claims.

The threshold question of "[w]hether a valid agreement to arbitrate exists is determined by state law." *Bright,* 2020 WL 1676889, at *2 (citations omitted).  In this regard, the Terms of Service contain the following "Governing Law" clause:

> These Terms are governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), AAA Rules, federal arbitration law, and . . the laws of the state in which you reside (as determined by the billing address you have provided us), without regard to conflict of laws principles. It is the intent of the parties that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. (Klenotic Dec. Ex. E § 26 & Ex. G § 27.)

Consistent with the complaint's allegation as to Plaintiffs' residency (Compl. ¶¶ 1-2), Scott provided a Tennessee billing address and Becker provided a Florida billing address in connection with their respective bookings of RVs through RVshare.com.   (Klenotic Dec. ¶¶ 18, 23.) Accordingly, the question of whether Scott entered a valid agreement to arbitrate is governed by Tennessee law, whereas Florida law controls with respect to Becker.[2]

---

[2] This result would be the same even in the absence of the governing law clause.  *See Anderson I*, 478 F. Supp. 3d at 692-94; *see also Rimel v. Uber Techs., Inc.,* No. 615-cv-2191, 2016 WL 6246812, at *5 (M.D. Fla. Aug. 4, 2016),  *adopted,* 246 F. Supp. 3d 1317 (M.D. Fla. 2017).

As outlined above, both Scott and Becker agreed to RVshare's Terms of Service by clicking on the "AGREE & CONTINUE" button to start the booking process and by clicking the "Confirm & Pay" button to complete the booking. Tennessee and Florida courts have consistently upheld clickwrap agreements like those Plaintiffs agreed to here. *See, e.g., Anderson I*, 478 F. Supp. 3d at 697 (applying Tennessee law and collecting cases); *Anderson II*, 490 F. Supp. 3d at 1274-75 (same); *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369-70 (S.D. Fla. 2011) ("In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts.") (citation omitted); *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304-05 (M.D. Fla. 2018); *Mason v. Midland Funding LLC,* 815 F. App'x 320, 322 (11th Cir. 2020) ("Courts have . . . largely approved the use of clickwrap agreements for the same basic reason that they have approved the use of shrink wrap agreements: the consumer is on notice that an agreement exists and receives the opportunity to review the terms of that agreement and to consent.").

Such agreements "have been found valid even where the party was required to click on a link to view the terms of the agreement." *Anderson I*, 478 F. Supp. 3d at 697-98 (collecting cases); *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028–29 (Fla. Dist. Ct. App. 2018) (enforcing arbitration clause contained in conspicuous hyperlink to terms and conditions); *Zamber v. American Airlines, Inc.*, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) ("Federal courts have consistently enforced clauses contained in clickwrap agreements . . . where the agreement is presented via a hyperlink to a page separate from the one containing the box or button manifesting assent.") (quoting *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190-91 (D.N.M. Mar. 28, 2018)); *Whitt v. Prosper Funding LLC*, 15-cv-136, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (enforcing arbitration clause where terms were viewable only by following conspicuous hyperlink).

For example, in *Anderson I*, this Court enforced an arbitration clause contained in a clickwrap agreement similar to the Terms of Service involved here. 478 F. Supp. 3d at 688-91, 696-99. There, the defendant's (eBay) online checkout process contained a screen with the following language: "By placing your order, you authorize PayPal to process your payment, and you agree to PayPal's user agreement and privacy statement and eBay's User Agreement and Privacy Notice." *Id*. at 688-89. Like the references to the Terms of Service in this case, the words "User Agreement" and "Privacy Notice" were hyperlinked. *Id*. As shown by the image below, underneath this language there was an icon "titled 'Confirm and Pay' that must be clicked on in order to complete the purchase." *Id*.



eBay sought to enforce the User Agreement's arbitration provision—which, like the Terms of Service in this case, included a class action waiver—arguing that the plaintiff accepted the User Agreement by clicking the confirmation button to proceed with his purchase. The *Anderson I* Court rejected the plaintiff's arguments against enforcement of the arbitration clause and granted

eBay's motion to compel. *Id*. at 696-99. In upholding the enforceability of the arbitration agreement under Tennessee law, the Court in *Anderson I* emphasized, among other things, that "the hyperlink directing Plaintiff . . . to the User Agreement was available on the same screen in which he was asked to confirm the agreement" and "[i]n one click of a mouse, Plaintiff . . . would have been able to access the User Agreement and its Arbitration Agreement." *Id*. at 698-99.

The circumstances in the present case are nearly identical to those relied upon by the Court in *Anderson I*. (Klenotic Dec. ¶¶ 7-14, 16, 21; Exs. A & B.) Like the plaintiff in *Anderson I*, Plaintiffs here had multiple opportunities to access and review RVshare's Terms of Service in one click of a mouse. (*Id*.) In each instance, the hyperlink to the Terms of Service was conspicuously presented to Plaintiffs in blue font and placed in close proximity to (either directly beside or above) the button Plaintiffs were required to select to confirm their agreement. (*Id*.) And in each instance, Plaintiffs agreed to the Terms of Service by clicking the required buttons. (*Id.*)

Judge Richardson also issued an opinion granting another defendant's (Walmart) motion to compel in the *Anderson* case. *See Anderson II*, 490 F. Supp. 3d 1265. That case likewise upheld the enforceability of a clickwrap agreement similar to RVshare's Terms of Service and supports granting RVshare's requested relief. *See id.* at 1269, 1275-76. Indeed, Walmart's checkout process conspicuously displayed the following language: "By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use." *Id*. at 1268-69. In upholding the terms and arbitration provision in *Anderson II*, the Court held that Walmart's "Terms of Use were not hidden from the consumer, and they required assent and confrontation by the user" where, like here, "the hyperlink was prominently displayed directly above the 'Place Order' button which was required to complete a purchase." *Id.* at 1275-76; *see also Asa*, 2017 WL 5894543, at *5-7 (enforcing arbitration clause administered through click-wrap process on Verizon's website).

Courts applying Florida law have reached the same result. *See Raw Life Organics LLC v. SBL, LLC*, No. 20-cv-61944, 2021 WL 217765, at *5 (S.D. Fla. Jan. 6, 2021), *adopted*, 2021 WL 217076 (S.D. Fla. Jan. 21, 2021); *Bell v. Royal Seas Cruises, Inc.,* No. 19-cv-60752, 2020 WL 5639947, at *6 (S.D. Fla. Sept. 21, 2020); *see also Zamber,* 2020 WL 1445479, at *3 (holding clickwrap agreement enforceable under Florida law where hyperlink was conspicuously presented directly above the button that a customer must click to log in); *Temple*, 360 F. Supp. 3d at 1304-05 (enforcing arbitration clause contained in clickwrap agreement where hyperlink to terms was placed above "Get a Quote" button and thus, would have been within plaintiff's "line of vision").

Federal courts in other jurisdictions have likewise upheld clickwrap agreements under similar facts. *E.g.*, *Plazza v. AirBnB, Inc.*, 289 F. Supp. 3d 537, 551-54 (S.D.N.Y. 2018) (AirBnB's sign in and account creation screens placed plaintiffs on reasonable notice of arbitration agreement contained in terms and conditions where operative button was followed by text referring to "Terms of Service" in blue font and underlined, indicating a hyperlink); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835-40 (S.D.N.Y. 2012) (Facebook's sign-up procedure gave users reasonable notice of terms of service where "Sign Up" button was immediately followed by language that "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service" and "Terms of Service" was underlined, indicating that the phrase was a hyperlink); *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011) (arbitration clause was enforceable where user clicked on button marked "accept," below which was statement in small gray font indicating that clicking on the button meant accepting the hyperlinked "terms of service"); *Gorny v. Wayfair Inc.*, No. 18-cv-8259, 2019 WL 2409595, at *5 (N.D. Ill. June 7, 2019) (compelling individual arbitration of plaintiff's claims where hyperlink to terms of use appeared immediately below "Place Your Order" button).

Plaintiffs have not and cannot supply any valid basis for the Court to deny enforcement of the parties' arbitration agreements. Indeed, Plaintiffs acknowledge in their complaint that the Terms of Service contain an arbitration agreement, but they then seek to avoid application of that agreement to their claims. (Compl. ¶¶ 87-90.) They allege that the arbitration agreement is unenforceable because renters must consent to RVshare's Terms of Service without an opportunity to first review them, that "the renter never signs nor in any way affirmatively acknowledges the [Terms]," and that the arbitration clause is "hidden" and "buried in the last pages" of the Terms of Service. (*Id.*) Each of these arguments fails.

First, contrary to Plaintiffs' assertions, renters are presented with multiple opportunities to review RVshare's Terms of Service during the booking process with the click of a conspicuously placed hyperlink. (Klenotic Dec. ¶¶ 7-14, Exs. A & B.)

Second, it is immaterial that Plaintiffs did not "sign" the Terms of Service. *E.g.*, *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) ("[A]rbitration agreements under the FAA need to be written, but not necessarily *signed*."); *McCray v. Universal Health Servs.*, No. 3:20-cv-00391, 2020 WL 4207648, at *6 (M.D. Tenn. July 22, 2020) (fact that arbitration agreement was unsigned was "irrelevant" because, under Tennessee law, assent to be bound may be manifested by parties' "actions or inactions"). Indeed, just like the terms at issue in *Anderson II*, RVshare's Terms of Service "require[] assent and confrontation by the user." 490 F. Supp. 3d at 1275-76. By clicking "AGREE & CONTINUE" and "Confirm & Pay" during the RV booking process, Plaintiffs acknowledged that they were agreeing to the Terms of Service and assented to the arbitration agreement contained therein. *See, e.g., id.*; *Zamber*, 2020 WL 1445479, at *3 (applying Florida law and holding plaintiff manifested assent to terms and condition by clicking log-in button).

Third, Plaintiffs' assertion that the arbitration clause is unenforceable because it is "hidden" and "buried in the last pages of its Terms" is without merit. Although the arbitration agreement appears in Section 23 of the Terms of Service, the existence of the arbitration provision is expressly disclosed on page 1, in the very first paragraph (Klenotic Dec. Exs. E & G, p. 1). *See Anderson I*, 478 F. Supp. 3d at 698, 698 n.5 (arbitration agreement was enforceable despite location on page 12 of User Agreement where "information regarding the existence of agreement can be found in bold font on the first page").

Finally, as Plaintiffs concede, the "failure to read a contract does not relieve a party of its obligations under the contract." (Compl. ¶ 89). This rule of law is recognized and enforced in both Tennessee and Florida, and defeats Plaintiffs' challenge to the arbitration clause here. *See Anderson I*, 478 F. Supp. 3d at 698 ("[A] party's failure to read a contract he or she signed is not . . . a defense to enforcement.") (citing *Wofford v. M.J. Edwards & Sons Funeral Home Inc.,* 490 S.W.3d 800, 812 (Tenn. Ct. App. 2015)); *Porter*, 273 So.3d at 1028–29 (compelling arbitration where hyperlink to terms was conspicuous and plaintiff "simply chose not to click on the hyperlink" because under Florida law, "a person has no right to shut his [or her] eyes or ears to avoid information, and then say that he [or she] has no notice").

In short, by completing the booking process for their respective RV rentals on RVshare.com, Plaintiffs agreed at least three times to be bound by RVshare's Terms of Service. In doing so, Plaintiffs assented to the arbitration agreement contained in the Terms of Service, where they agreed to resolve "[a]ny and all claims . . . by binding arbitration, rather than in court." (Klenotic Dec. Exs. E & G, § 23.) In addition, Plaintiffs also agreed to the class-action waiver set forth in the arbitration agreement, where they agreed that they "are each waiving the right to participate as a plaintiff or class member in any purported class action lawsuit." (*Id.*) Plaintiffs

have no cognizable defense to enforcement and application of the arbitration agreement and the class-action waiver here.[3]   Accordingly, their agreements to arbitrate as individuals must be "rigorously enforced" as written.  *See Am. Express Co.*, 570 U.S. at 233.

### 2. Plaintiffs' claims are within the scope of the arbitration agreement.

The arbitration agreement set forth in RVshare's Terms of Service applies to "**any and all claims.**"   (Klenotic Dec. Exs. E & G, § 23 (emphasis in original).)   Such "broadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview."  *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (citing *Fazio*, 340 F.3d at 396).   The Court, when faced with such a broad arbitration provision, "should follow the presumption of arbitration and resolve doubts in favor of arbitration.  Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators."  *See SolvayPharms., Inc. v. DuramedPharms., Inc.,* 442 F.3d 471, 482 n.10 (6th Cir. 2006) (citations and punctuation omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (emphasizing that any doubt regarding the applicability of an arbitration clause must be resolved in favor of arbitration).

---

[3] While Plaintiffs' complaint asserts a variety of fraud claims, those allegations do not defeat the arbitration agreement set forth in the Terms of Service.  In deciding a motion filed pursuant to sections 3 and 4 of the FAA, the Court "may consider only issues relating to the making and performance of the agreement to arbitrate."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-404 (1967) (holding general claims of fraud must be resolved by arbitrator and only fraud that "goes to the 'making' of the agreement to arbitrate" may be adjudicated by district court).  Thus, only "'a well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*' may invalidate an arbitration clause, and district courts are authorized to make threshold rulings in this regard."  *See  Fazio,* 340 F.3d at 397 (quoting *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1278-79 (6th Cir. 1990)) (emphasis in original).  Plaintiffs do not allege any fraud in the "making" of their respective agreements to arbitrate.  Accordingly, Plaintiffs' fraud claims cannot invalidate the arbitration provision contained in the Terms of Service and those claims must be resolved by the arbitrator, rather than this Court.

The standard for determining whether a particular claim or dispute is encompassed by an arbitration provision is whether the "action could be maintained without reference to the contract or relationship at issue." *Fazio*, 340 F.3d at 395. And it is Plaintiffs' burden to show that their claims do not fall within the scope of the arbitration agreement set forth in the Terms of Service. *See Gilmerv. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citations omitted). To meet that burden, Plaintiffs must establish "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation and internal quotation marks omitted).

Here, none of Plaintiffs' claims can be maintained without reference to their agreements and relationships with RVshare. Plaintiffs' fraud counts (Counts I through V) are premised on RVshare's alleged misrepresentation and/or concealment of facts regarding "the entire RV rental and claim process." (Compl. ¶¶ 92-126.) These alleged misrepresentations also form the basis of Scott's claim for violation of the Tennessee Consumer Protection Act (Count VI) and Becker's claim for violations of Florida's Unfair and Deceptive Trade Practices Act (Count VII). (*Id.* ¶¶ 131, 134-35.) Plaintiffs' "Unjust Enrichment / Quasi Contractual Claim" (Count VIII), is also based on the parties' contract and relationship, and seeks "non-restitutionary disgorgement" of amounts paid to RVshare for its services through RVshare.com, including rental fees, insurance premiums, lost damage deposits, and dispute handling fees. (*Id.* ¶¶ 139-41.)

All of the matters about which Plaintiffs complain are expressly covered by RVshare's Terms of Service. *See*, for example, Klenotic Dec. Exs. E & G at § 2 (describing company's limited role with respect to transactions between owners and renters); § 4 (describing owner's obligation to provide true and accurate information and photos of RVs listed for rent on RVshare.com); § 5 (stating that RVshare does not control the content of listings nor the condition

or suitability of any RVs and disclaiming liability related to listings); § 7 (identity verification); § 9 (describing obligations of owners and renters by entering into rental agreement, including "to revise the rental agreement as necessary to accurately represent the RV, rules, features, etc."); § 10 (describing company's role in payment disputes); § 11 (describing terms governing damage to RVs and agreement of members "to assist Company in the settlement of security deposit claims and dispute resolution"); § 12 (security deposits); § 13 (insurance); § 14 (explaining company service fees, which cover among other things 24/7 roadside customer support); § 15 (describing RVshare renter fees); § 20 (limitation of liability); § 21 (disclaimers); § 23 (arbitration).

Accordingly, since Plaintiffs cannot maintain any claim without reference to their contractual dealings and relationship with RVshare, this dispute falls squarely within the scope of Plaintiffs' agreements to arbitrate.[4]

**B.    The Court Should Require Arbitration on an Individual Basis.**

The Court should also compel each Plaintiff to proceed with arbitration on an individual basis.  "The 'principal purpose' of the FAA is to ensure that private arbitration agreements are enforced according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citation and internal punctuation omitted).  Consistent with that purpose, the FAA allows a party to obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4; *see also* 9 U.S.C. § 3; *Concepcion*, 563 U.S. at 344 (noting that "§3 requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'; and §4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . .").

---

[4] The third and fourth prongs of the Sixth Circuit's test are not at issue here, as Plaintiffs do not assert any federal statutory claims in this action and all of the claims asserted in the complaint are referable to arbitration.  *See Anderson I*, 478 F. Supp. 3d at 691.

Importantly, the United States Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). An agreement to arbitrate is therefore presumed to require arbitration on an individual basis unless the agreement expressly permits class arbitration. *See id.*; *see also Huffman v. Hilltop Cos.*, 747 F.3d 391, 398-99 (6th Cir. 2014) (holding, where arbitration clause did not mention classwide arbitration, "that the arbitration clause does not authorize classwide arbitration, and . . . that the plaintiffs must proceed individually").

Far from authorizing class arbitration, RVshare's Terms of Service include an express waiver of the right to pursue claims on a class-wide basis:

> **You and Company acknowledge and agree that we are each waiving the right to a trial by jury as to all arbitrable claims. You and Company acknowledge and agree that we are each waiving the right to participate as a plaintiff or class member in any purported class action lawsuit, class-wide arbitration, private attorney-general action, or any other representative proceeding as to all claims. Further, unless you and Company both otherwise agree in writing, the arbitrator may not consolidate more than one party's claims and may not otherwise preside over any form of any class or representative proceeding.** (Klenotic Dec. Exs. E & G, § 23 (emphasis in original).)

Arbitration agreements that preclude class relief, like the one found in RVshare's Terms of Service, are valid and enforceable. *Concepcion*, 563 U.S. 333; *Am. Express Co.*, 570 U.S. at 233 ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, . . . including terms that 'specify with whom [the parties] choose to arbitrate their disputes.'"). In this case, Plaintiffs and RVshare mutually agreed in the Terms of Service to waive the right to pursue class claims, and such waiver must be enforced as written. Accordingly, the Court should enter an order directing Plaintiffs to arbitrate their claims against RVshare in accordance with the Terms of Service and to do so on an individual, non-class basis.

**C.      This Action Should be Stayed Pending Completion of Arbitration.**

Under the FAA, if the Court "determines a cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete." *Fazio,* 340 F.3d at 392 (citing 9 U.S.C. § 3); *see also Finchum v. Spring Commc'ns Holding, Inc.*, No. 3:19-cv-348, 2019 WL 3531797, at *3 (M.D. Tenn. Aug. 2, 2019) ("Section 3 requires a court to stay the proceedings where (1) the issues are arbitrable; (2) a party requests a stay; and (3) the party requesting the stay is not in default.") (citation omitted).  Because RVshare has established that an enforceable arbitration agreement applies to all of Plaintiffs' claims and RVshare is not in default in seeking to enforce that agreement, the Court should stay this litigation pending arbitration of Plaintiffs' claims on an individual basis.

<u>**CONCLUSION**</u>

For the reasons set forth above, RVShare respectfully requests that the Court grant this motion to stay proceedings and compel individual arbitration, and grant such other and further relief as the Court deems proper and just.

Dated: July 12, 2021                              Respectfully submitted,

                                                            */s/ Michael G. Abelow*
                                                            Michael G. Abelow (#26710)
                                                            Alice E. Haston (#038708)
                                                            SHERRARD ROE VOIGT & HARBISON, PLC
                                                            150 Third Ave. S, Suite 1100
                                                            Nashville, TN 37201
                                                            P: 615-742-4200
                                                            F: 615-742-4539
                                                            mabelow@srvhlaw.com
                                                            ahaston@srvhlaw.com

                                                            —and—

Patrick J. Krebs (*pro hac vice*)
Daniel H. Bryan (*pro hac vice*)
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Telephone: (216) 706-3692
Fax: (216) 241-3707
pkrebs@taftlaw.com
dbryan@taftlaw.com

*Attorneys for Defendant RVshare LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of July, 2021, a true and exact copy of the foregoing

was electronically filed with the Clerk's office using the CM/ECF system, which sent a notification

to all parties registered with the Court's electronic filing system, including the following:

James C. Bradshaw III
Wyatt, Tarrant & Combs, LLP
333 Commerce St., Suite 1050
Nashville, TN 37201
(615) 244-0020
jbradshaw@wyattfirm.com

Cam F. Justice
Adam D. Breit
Justice Law
8551 W. Sunrise Blvd., Suite 300
Plantation, FL 33322
(954) 515-5656
justicepleadings@justiceinjurylawyer.com
abreit@justiceinjurylawyer.com

*Attorneys for Plaintiffs*

*/s/ Michael G. Abelow*
Michael G. Abelow