# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **LESLIE SCOTT, TAL BECKER,** ) <br> **Individually and on behalf of others** ) <br> **similarly situated** ) <br> ) <br>       **PLAINTIFFs,** ) <br> ) <br> **v.** ) <br> ) <br> **RVSHARE LLC,** ) <br> ) <br>       **DEFENDANT.** ) <br> ) | **CIVIL ACTION NO. 3:21-cv-00401** <br><br> **Judge: William L. Campbell, Jr.** <br><br> **Magistrate Judge: Alistair Newbern** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS LESLIE SCOTT AND TAL BECKER'S OPPOSITION TO RVSHARE LLC'S MOTION TO STAY PROCEEDINGS AND COMPEL INDIVIDUAL ARBITRATION.

Plaintiffs, LESLIE SCOTT and TAL BECKER, individually and on behalf of others similarly situated, respectfully submit this Memorandum of Law in opposition to Defendant RVSHARE's "Motion to Stay Proceedings and Compel Individual Arbitration." For the reasons stated below, the Motion should be denied in its entirety.

## INTRODUCTION

Defendant RVshare touts itself as "the world's first and largest peer-to-peer recreational vehicle rental marketplace." It promised Plaintiffs, and those similarly situated, a "worry-free" rental of recreational vehicles ("RVs") to consumers. Each of the instant Plaintiffs rented an RV that was presented to her on RVshare.com expecting a "worry-free" transaction; however, what they received was anything but worry-free. As the Plaintiffs learned, RVshare's promotion of consumer protection disguises a dispute resolution scheme in which the company is incentivized to rule against the very consumers to which it promised a "worry-free guarantee."

1

Plaintiffs cannot be bound to the arbitration provision of RVshare's Terms of Service, because they never expressly agreed to it, had no notice of it, and never assented to it. RVshare claims it entered into a "clickwrap" agreement with Plaintiffs, and provides this Court with ample authority supporting the validity of such agreements. However, its legal presentation is consistent with its website's presentation: it hides the truth, just like it fails to give the truth on its website and Terms of Service. RVshare further attempts to duck its promises of a worry-free guarantee by forcing Plaintiffs to individually arbitrate their claims based upon a complex arbitration provision buried deep in one of its "Terms of Service" agreements.

First, part and parcel to the use of RVshare's website and hidden from the Plaintiffs are the Terms of Service, of which Plaintiffs were not reasonably notified, for reasons set forth below. Specifically, deep within the Terms of Service is the arbitration provision for which Plaintiffs had no notice and which RVshare now attempts to enforce. In short, had Plaintiffs been made aware of the "Terms of Service" as well as other hidden dispute resolution mechanisms not even contained within the Terms of Service, Plaintiffs never would have rented through RVshare.

To that end, contrary to the reality of the user experience and design of its website and the Terms of Service, RVshare now makes the unsubstantiated argument that Plaintiffs were reasonably placed on notice of the arbitration provision by asserting its website contains a reliable and safe "clickwrap" agreement. RVshare's website instead uses an elusive "browsewrap," or at best, "hybridwrap" agreement for which there was no express agreement or clear assent.

Conspicuously, RVshare's Motion fails to once mention its website's "browsewrap" presentation of Terms of Service, because a browsewrap presentation is hard to enforce. Browsewrap agreements cannot be enforced unless there is both (1) a conspicuously placed hyperlink to the terms; and (2) notice informing the user that a specified action will demonstrate

2

assent to those terms. *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171 (9th Cir. 2014). RVshare's Terms of Service failed to comply with these requirements.

Lastly, beyond the material concealment of the arbitration provision, RVshare touts itself as a "neutral third party" when disputes arise between RV owners and renters. However, it neglects to reveal to renters that it takes a 25 percent cut when it adjudicates disputes about overages and damages. This clear conflict of interest is hidden from the consumer. While the idea of "neutrality" sounds nice, nothing could be further from the truth.

Plaintiffs did not assent to the Terms of Service and RVshare cannot prove otherwise. No meeting of the minds took place, and Plaintiffs did not enter a binding, enforceable contract. As such, RVshare's motion to compel arbitration must be denied.

## LEGAL STANDARD

When parties litigating the application of an arbitration agreement rely on documents outside the pleadings, like RVshare here, the Sixth Circuit applies the Fed. R. Civ. P. 56 summary judgment standard. The party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. Applying this summary-judgment-like standard, a court will conclude, as a matter of law, the parties did not enter into a contract containing an arbitration clause when there is no genuine dispute as to any material fact concerning the agreement's formation. *Hazlett v. Family Dollar Stores of Tenn., Inc*., 2021 U.S. Dist. LEXIS 31225, 1, 2021 WL 663665. Here, there is a genuine dispute as to the material fact of whether Plaintiffs assented to the Terms of Service.

### ARGUMENT: PLAINTIFFS ARE NOT BOUND BY THE SUBJECT ARBITRATION PROVISION BECAUSE THERE WAS NO MUTUAL ASSENT OR AGREEMENT BY THEM TO THE ARBITRATION PROVISION

**A. The Federal Arbitration Act ("FAA") favors arbitration ONLY if the parties themselves mutually agreed previously to have their disputes arbitrated. In this case, there was no mutual agreement because there was no actual or constructive notice of the subject arbitration provision.**

3

Under the FAA, it remains a "fundamental principle" that "arbitration is a matter of contract" and not something to be foisted on the parties at all costs. *Howard v. Ferrellgas Partners*, 748 F. 3d 975, 977 (10th Cir. 2014). This Court should not compel arbitration unless it first determines that an agreement to arbitrate exists under the generally applicable contract law of the state whose law governs the question.[1]

There are two elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 21 (2d Cir. 2016) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F. 3d 391, 394 (2d Cir. 2015)). Thus, first this Court must determine whether the parties agreed to arbitrate any dispute by evaluating the existence of a valid agreement to arbitrate, and if so, it must next determine whether the dispute falls within the scope of the agreement. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 536 (5th Cir. 2003).

For an arbitration provision contained in an online Terms of Service agreement to be enforceable against a party, there should be <u>clear consent</u> by that party to be bound by the agreement. "[P]arties cannot be forced to submit to arbitration if they have not agreed to do so." *Chamlee v. Jonesboro Nursing and Rehab. Ctr., LLC*, No. 1:18-cv-05899-ELR, 2019 WL 6042273, at 1 (N.D. Ga. Aug. 14, 2019) (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d

---

[1] "The threshold question facing any court considering a motion to compel arbitration is...whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). "It is well settled that a court may not compel arbitration until it has resolved the question of the very existence of the contract embodying the arbitration clause." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002). This threshold question is for the Court, even if the challenged arbitration agreement clearly reserves questions of arbitrability for the arbitrator. See *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011) (court "must first resolve the question of the very existence of the contract embodying the arbitration clause," before turning to "questions of arbitrability") (quotation omitted).

851, 854 (11th Cir. 1992). When the existence of an arbitration agreement between the parties is in dispute, as it is here, the party seeking to compel arbitration has the burden to demonstrate the agreement at issue requires the parties to arbitrate. *Scheurer v. Fromm Family Foods LLC*, 202 F. Supp. 3d 1040, 1043 (W.D. Wis. 2016), aff'd, 863 F.3d 748 (7th Cir. 2017). When the movant's evidence fails to demonstrate it is entitled to compel arbitration, the motion should be denied as a matter of law. *Gen. Ass'n of Regular Baptist Churches v. Scott*, 549 F. App'x 531, 533 (7th Cir. 2013); *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015) ("The Court is without sufficient evidence to find that there exists an agreement to arbitrate.").

Further, when the non-movant demonstrates that there is a genuine issue of material fact on the critical question of whether a valid arbitration agreement between the parties exists, the motion to compel must be denied. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). In deciding whether the party opposing a motion to compel arbitration has identified a genuine issue of material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id*. (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**B. The arbitration provision does not bind Plaintiffs because they did not receive adequate notice of the Terms of Service or assent to them. Defendant argues its website uses an enforceable "clickwrap" agreement; however it is actually a "browsewrap," agreement which did not give adequate notice to the Plaintiffs.**

In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To form a valid contract, the parties must demonstrate mutual manifestation of assent, which "applies with equal force to arbitration provisions contained in contracts purportedly formed over the Internet." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862, (2016) (citing *Nguyen*, 763 F.3d at 1177). Here, RVshare "as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a

preponderance of the evidence." *Mitchell v. U-Haul Co. of Cal*., No. 16-cv-04674- JD, 2017 U.S. Dist. LEXIS 79064, at 1 (N.D. Cal. May 23, 2017) (citing *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014)).

Assent to an electronic agreement can be demonstrated by showing either that: (i) the consumer had actual knowledge of the arbitration provision or (ii) a conspicuous notice that would have put "a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177; see also *Long* at 865. RVshare has provided no evidence that Plaintiffs had actual notice of the Terms of Service. Unlike other retailers, it does not require users to affirmatively click a box confirming assent to the Terms of Service. In fact, it has not proved whether any consumers have ever clicked on the Terms of Service in the normal course of business. Thus, whether Plaintiffs assented to the arbitration provision turns on whether RVshare can prove that its website provided them with "constructive notice" of its terms. *See Id.* On this point, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Long*, at 862. Here, there was no actual notice of the Terms of Service.

### i. What is "clickwrap?"

RVshare did not utilize a "clickwrap" agreement on their website relative to the subject arbitration provision. A "clickwrap" agreement "requires users to affirmatively assent to the terms of use before they can access the website and its services." Clickwrap requires users to click a box or toggle a button to affirmatively accept written terms and conditions. *See, e.g., Meyer v. Uber Technologies*, 868 F.3d 66, 75 (2d Cir. 2017).

Below is an example of what a clickwrap agreement looks like:

Case 3:21-cv-00401   Document 30   Filed 08/16/21   Page 6 of 25 PageID #: 248



Courts across the country regularly enforce clickwrap agreements because they require affirmative assent to the terms of the relationship. *See Meyer* at 75 ("Courts around the country have recognized that [an] electronic "click" can suffice to signify the acceptance of a contract[.]")[2]. Again, here both in the sign-up and check-out process, RVshare did not utilize a clickwrap agreement and thus, there is no online version of a signature or guarantee that the subject arbitration provision was visible and clear to everyone.

### ii. What is "browsewrap?"

While a "clickwrap" agreement requires users to expressly manifest assent to the terms by clicking a button, a "browsewrap" agreement expects a user to be bound to terms and conditions by posting the hyperlink terms on the website with no toggle. *Meyer* at 75.

Below is an example of what a browsewrap agreement looks like:

---

[2] In *Meyer*, the Second Circuit enforced an arbitration agreement located within the terms of service for Uber ride-sharing software. Put simply, "Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer*, 868 F.3d at 75. "Clickwrap" agreements, which digitally present the applicable terms and require consumers to affirmatively indicate their assent, e.g., by checking a box or clicking a button stating, "I agree", to such terms prior to permitting the use of a product or service.

7



Courts are reluctant to uphold browsewrap agreements.

Generally, courts have refused to enforce browsewrap agreements because the fundamental element of consent is lacking. *See*, e.g., *Nguyen* (affirming the district court's decision not to enforce an arbitration agreement that was contained in a browsewrap hyperlink). The *Nguyen* court held that Barnes & Noble's terms could not bind the plaintiff, despite being presented through a "conspicuous" link during the checkout process, because the website did not prompt users to affirmatively assent to the terms. Absent any affirmative action by the user acknowledging the terms of the browsewrap agreement, the validity of such an agreement is an issue of fact that turns on whether a user has actual or constructive knowledge of a site's terms. *Sw. Airlines Co. v. BoardFirst, L.L.C.*, WL 4823761, at 5 (N.D. Tex. Sept. 12, 2007).

Furthermore, in a landmark 2002 ruling in *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2002), the Second Circuit denied Netscape's motion to compel arbitration under a browsewrap software license agreement, holding that users of Netscape's software did not have "reasonable notice" of the license agreement containing the agreement to arbitrate. Here, there was neither express nor reasonable notice to the Plaintiffs of the subject arbitration provision.

### iii. What is "hybridwrap?"

A hybridwrap agreement "prompt[s] the user to manifest their assent to particular terms by engaging in some dual-purpose action, such as creating an account." *Nicosia v. Amazon.com*, 384 F.Supp.3d 254 (2019). Essentially, a website notifies the user of the existence of the website's terms of use and, instead of providing an "I agree" button, advises the user that they agree to the

terms of service when registering or signing up. In *Anand v. Heath,* U.S. Dist. LEXIS 109076 (2019), the Seventh Circuit stated that many online agreements do not fall neatly into either the clickwrap or browsewrap category. Rather than abandoning the arguably misleading clickwrap/browsewrap dichotomy altogether, the court described a third category of online contract, a "hybridwrap," to describe an online agreement that combines characteristics of a clickwrap and browsewrap. This mode of analysis, which a number of courts have employed since at least the Southern District of New York's opinion in *Fteja v. Facebook*, 841 F.Supp.2d 829 (2012), holds hybridwrap agreements "typically prompt the user to manifest assent" after presenting a hyperlink to the terms and conditions, rather than displaying the terms themselves.

In *Anand*, the words "I understand and agree to the <u>Terms & Conditions</u> which includes mandatory arbitration and <u>Privacy Policy</u>" were displayed <u>right above</u> a "continue" button. The court ruled the website did not provide clear notice that clicking the button constituted assent to hyperlinked terms and conditions containing an arbitration provision. *Anand* demonstrated that online agreements risk unenforceability when terms are presented in a manner that fails to make clear to users they are agreeing to be bound. *Anand* at 9. The defendants in that case, as RVshare does here, contended that when Anand registered on the website, submitted her contact information, and advanced through the website after clicking "continue," she expressly assented to an arbitration clause contained in the terms and conditions since it stated, "I understand and agree to the Terms & Conditions." The court disagreed.

First, the court examined how Reward Zone, the party moving to compel arbitration, presented its terms to users. The court noted that the terms themselves were presented through a hyperlink, and the user's ability "to continue through the site was not conditioned on express assent" to the terms. Significantly, the "continue" button did not establish a connection to the "I understand and agree…" language preceding the link to the terms and conditions. *Id* at 12.

9

Like that case, the RVshare "agreement" is unenforceable because nothing expressly links the "I understand and agree…" language to the "continue" button. There was no "notice informing the user that, by clicking the button, the user was agreeing to" terms and conditions. Anand and the instant Plaintiffs were not, for example, presented with an "'I agree' box after being presented with a list of terms and conditions for use," nor were they otherwise "require[d]… to manifest assent to the terms and conditions expressly." *Nguyen* 763 F.3d at 1175-76.

Second, the court rejected the defense argument that Anand assented by affirmatively clicking "continue" to proceed through the website. The court pointed back to its finding that the website did not explain that clicking "continue" would "constitute assent to the terms and conditions or that continuation was conditioned on such assent." *Anand* at 12. That is also the case with RVshare's website.

Third, the court also examined the placement of the "I understand and agree . . ." text above the "continue" button. Here, there was "no connection between the statement 'I understand and agree . . .' and the 'Continue' button apart from the placement of the text above the button." The court reasoned the "mere proximity of a terms and conditions hyperlink to a button that the user must click to proceed does not equate to an affirmative manifestation of assent to the terms and conditions." *Anand* at 12 (citing *Nguyen* 763 F.3d at 1179). RVshare's website fails in this regard as well.

**C. By using a "browsewrap" or "hybridwrap" agreement, RVshare's sign-up process did not provide actual or constructive notice to Plaintiffs and similarly situated consumers.**

Whether an online contract is formed depends entirely on the design and content of the interface. *Meyer v. Uber Techs. Inc*. at 75. Regardless of the "wrap" terminology one uses, the key to making online agreements enforceable is providing clear notice of the terms to users, and obtaining users' express assent to be bound by those terms. This Court should focus its analysis on whether the terms of the agreement were "reasonably conspicuous" because "[c]larity

10

and conspicuousness of arbitration terms are important in securing informed assent." *Specht v. Netscape Communications Corp.*, 306 F. 3d 17. The question here is whether a reasonable person would understand they were assenting. It is clear Plaintiffs did not.

RVshare's website is an e-commerce platforms for the rental of RVs. All users are required to sign up for an account before renting. Here, RVshare failed to obtain an "agreement" from Plaintiffs to the Terms of Service, because all they required users to do was check a box indicating they were 25 years old and licensed drivers, and then click a button labeled "agree & continue" to initiate the rental process. Conspicuously missing from this presentation by RVshare was any express agreement or constructive notice of the Terms of Service. Then, in significantly reduced sized fonts, located elsewhere on the screen, was text indicating that "[b]y clicking … you are agreeing to the RVshare Terms of Service, Optional Insurance Terms, Privacy Policy, and to receive booking-related texts." This inconspicuous, unclear presentation fails under the prevailing caselaw and creates a question of fact as to whether there was assent by Plaintiffs.

RVshare uses a browsewrap configuration to "notify" users of its Terms of Service, which courts have been reluctant to uphold. According to the Declaration of Thomas Klenotic, the agreement was accessible through a hyperlink labeled "RVshare Terms of Service" that was presented to Plaintiffs on the website. Notwithstanding the Declaration's lack of evidence supporting the accuracy of the "regenerated HTML representation" and that Plaintiffs dispute that they ever consented to the "Terms of Service," it is undisputable that the arbitration provision was only accessible through a hyperlink that required no affirmative action on Plaintiffs' part before proceeding through the website. As such, there was no clear, visible notice of the Terms of Service to Plaintiffs and no express assent by the Plaintiffs to be bound by those terms.

### i. The Instant RV Bookings

The first time RVshare claims that users agree to its terms of service is via the "begin your booking" link. Each time the Terms of Service are included in the website, RVshare used a browsewrap (or hybridwrap[3]). This makes the assent to the Terms of Service barely visible and tricks the user into believing they are agreeing to what they just checked in the box. For instance, when users try to view RVs for rent on the website, renters must click a box stating, "I certify that I am at least 25 years old at the time of rental and I have a valid driver's license". See screenshot below and the Declarations of Leslie Scott ¶6, and Tal Becker ¶6.)



Here, the only thing RVshare obtained from Plaintiffs was an "acknowledgment" that they were 25 years old and licensed drivers through checking a box certifying those facts. Significantly, checking the aforementioned box and the subsequent, immediate clicking of a button labeled "Agree & Continue" is the only affirmative action required by users like Plaintiffs to proceed to the next page and initiate the rental process. Without checking the certification and clicking the "Agree & Continue" box, a website user cannot proceed to the next page and cannot continue the

---

[3] The terminology of browsewrap vs. hybridwrap is irrelevant as the Notice was insufficient. The website is confusing and does not properly lay out or obtain the assent.

rental process. Notably, none of these actions deal with the Terms of Service or the arbitration provision.

As noted in the graphic above, the Terms of Service appear in significantly reduced font and elsewhere on the screen[4] with the following text: "[b]y clicking Agree & Continue, you are agreeing to the RVshare Terms of Service, Optional Insurance Terms, Privacy Policy, and to receive booking-related texts." No doubt, no box establishes affirmative notice or assent to the Terms of Service, unlike what is specifically required to click in order to proceed with the rental process. No box seeks confirmation or affirmation that the terms were read, understood and/or agreed to. RVshare's hyperlink to the Terms of Service in its sign-up process is in a smaller font compared to the remainder of the text and language regarding purported assent and to the side, as shown above. Moreover, the hyperlink for its Terms of Service is blended in with less significant hyperlinks and the same blue color, inconspicuously placed. As one can easily see, RVshare's interface was cluttered with diverse text, displayed in multiple colors, sizes and fonts, and features a button to click that distracts the user from the relevant Terms of Use hyperlink. Most significantly, because there is no clear confirmation or box clicked indicating the user agrees to the Terms of Service, RVshare misleads this Court when it claims the Terms of Service is a clickwrap agreement. When signing up for RVshare, the user does not have to click on anything to acknowledge or specifically note the Terms of Service. The only clickwrap present on RVshare's website is the agreement that the user is at least 25 years old at the time of rental and have a valid driver's license. (Scott Dec. ¶6.); (Becker Dec. ¶6.)

In fact, due to this clickwrap used to highlight the age and driver licensure, users are steered away from believing they are agreeing to anything but the fact that they are 25 and have a driver license. RVshare distracts the user and confuses them with a click box (assent), since to RVshare

---

[4] Font and placement depend on the users web-browser or phone-browser.

the fact that the consumer is 25 and has a valid driver license is of utmost importance. (Scott Dec. ¶6.); (Becker Dec. ¶ 6.)

The Terms of Service, by RVshare's own admission, is off to the side in significantly smaller font. It is dwarfed by the age and licensure click box, with a large yellow button below it claiming that they agree to the fact that they are 25 and has a valid driver's license. In fact, the button even states: Agree & Continue.

To any reasonable person, it seems that the Agree & Continue means the user is confirming that they are over 25 and has a valid driver's license. It is obvious that RVshare does not care about properly putting the user on notice of the terms of service, otherwise they would have used a clickwrap assent. (Scott Dec. ¶ 6; (Becker Dec. ¶ 6.)

In this case, both Plaintiffs swear that they did not notice the Terms of Service. A reasonably prudent person would see the much larger and conspicuous "Agree & Continue" button after pressing the clickbox and would interpret that as an agreement that they are over 25 and have a valid driver license. (Scott Dec. ¶¶ 7, 8, 9 and 13.); (Becker Dec. ¶¶ 7, 8, 9 and 13.)

### ii. Proximity of hyperlinks have no bearing on actual or constructive notice.

Because there is no actual notice or in this case, no box that must be checked on RVshare's website confirming review and/or agreement to the Terms of Service, it is important to note that as a matter of law, there was no constructive notice. "[C]lose proximity of hyperlink to the relevant buttons that users must click on without more is insufficient to give rise to constructive notice." *Nguyen*, 763 F.3d at 1179. In the absence of actual notice, a browsewrap agreement like the Terms of Use at issue here, is enforceable only if a reasonably prudent user would have constructive notice of those terms, which depends on "the conspicuousness and placement of the terms and conditions, as well as the content and overall design" of the website. *Id.* at 1177. Constructive notice did not exist where the terms are "buried

14

at the bottom of the page or tucked away in obscure corners of the website," especially when such scrolling is not required to use the site. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002). Similarly, courts decline to enforce agreements where the terms are available only if users scroll to a different screen, *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), complete a multiple-step process of clicking non-obvious links, *Van Tassell v. United Mktg. Grp.*, 795 F. Supp. 2d 770, 792-93 (N.D. Ill. 2011), or parse through confusing or distracting content and advertisements, *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 293 (2d Cir. 2019). For all the reasons discussed herein, Plaintiffs were not on constructive notice of the subject arbitration provision and therefore, should not be punished for RVshare's errors and omissions in creating a flawed rental process on its website. RVshare understood the importance of a clickwrap because of its use of one for other things like the confirmation of age and possessing a driver license.

The fact remains, however, RVshare failed to place a clickwrap toggle where it placed the subject Terms of Service, with the calculated result of the user of its website, missing the Terms of Service altogether. To solve this issue, all RVshare had to do was put another toggle clickwrap, or at the very least add words such as "accept Terms of Service" to the toggle it had on its website. Any of these actions could have equated to actual "click acceptances" of the online Terms of Service agreement, but none of these features are present on its website. RVshare, as the creator of their own website, had the responsibility to inform users of the on-line Terms of Service. It failed to do so.

> Where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.

*Nguyen.*, 763 F.3d 1171

In this case, RVshare failed to display the Terms of Use to users in a conspicuous fashion. Additionally, its website failed to affirmatively and unambiguously require users to assent to the terms.

### iii. "Confirm and pay" likewise fails to place the user on notice of the subject arbitration provision.

The second place RVshare claims that it provides notice to the user is the "confirm & pay" screen. Once again, RVshare fails to display the Terms of Use to users in a conspicuous fashion. Instead, RVshare used a smaller, lighter font which made it more likely a user would believe they are confirming their credit card information. The inconspicuous nature of the terms and conditions here is very similar to that in *Berman v. Freedom Fin. Network, LLC*, U.S. Dist. LEXIS 160406, (N.D. Cal. Sep. 1, 2020), in which the court found hyperlinked terms and conditions too inconspicuous to provide constructive notice. In that case the Court found although "[a]s in *Nguyen*, the hyperlink to [the terms and conditions] is located in proximity to the button with which the user must interact to continue" the relevant phrase "'I understand and agree to the Terms and Conditions which includes mandatory arbitration and Privacy Policy' is formatted in black font against a white background which is exceedingly small compared to the larger, more colorful and high-contrast fonts on the rest of the page, making it difficult to read on a large, high-resolution monitor, much less a mobile device." *Id.* at 8.

Indeed, the facts in *Berman* were even more compelling as to the notice requirement than they are here because the "sign-in" page in *Berman* at least referenced mandatory arbitration, whereas here the small, greyed out reference to Terms of Service made no mention of arbitration, which was simply contained therein. Numerous courts have denied arbitration clauses in similar circumstances. *Rushing v. Viacom Inc.*, 2018 U.S. Dist. LEXIS 176988, 6-7 (N.D. Cal. Oct. 15, 2018) (refusing to enforce arbitration clause inside browsewrap link website user was unlikely to see); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (finding that "terms of use"

were not made "readily and obviously available to [the consumer]" where the "hyperlink to the 'terms of use' was not in large font, all caps, or in bold" and noting "[b]y contrast, the 'SIGN IN' button is very user-friendly and obvious, appearing in all caps, in a clearly delineated box in both the upper right hand and the lower left hand corners of the homepage"). Here, RVshare had a bright yellow, user-friendly and obvious clearly delineated box "confirm & pay" button. Simply put, the Terms of Use containing the arbitration provision could have easily been placed in the same bright yellow box as "AGREE & CONTINUE" and "confirm & pay" but clearly, they were not.

**D. Defendants have failed to meet their burden of proof to compel arbitration in the instant case.**

The Sixth Circuit treats motions to compel arbitration like motions for summary judgment. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The court views all facts and inferences in the light most favorable to the nonmoving party. *Id.*

It is RVshare's burden to prove Plaintiffs assented to the Terms of Service, which it has not done based on its own declarations as well as the declarations of Becker and Scott. RVshare cannot establish Becker and Scott assented to the Terms of Service since their agreement was a browsewrap/hybridwrap which requires no confirmation. *See Berman*, 2020 U.S. Dist. LEXIS 160406, at 7 (holding defendant failed to meet its evidentiary burden to establish the sign in "flow" that plaintiffs had followed). Accordingly, Plaintiffs did not assent to, nor did they have actual or constructive notice of, the Terms of Service when they signed up for RVshare.

RVshare is a sophisticated entity. Its business is derived from bookings on its website. If RVshare wanted to ensure this would not be an issue and ensure the arbitration provision is agreed to, all it had to do was make an actual "click-acceptance" of its online Terms of Service agreement incorporating an arbitration provision. For example, RVshare could have simply created a clickwrap agreement in the manner below:

17



In the example above, the user has to affirmatively click-accept the "redaction agreement" by checking the box that they understand that if they file, they must comply with the redaction rules and that they have read the notice. Had RVshare created a means of accepting its Terms of Service like the above example, this Court would have a compelling reason to enforce the arbitration provision against Plaintiffs. Furthermore, RVshare would then be able to provide this Court with compelling evidence of a click-accept record linked to the user who actually "accepted" the agreement, proving the user saw it, clicked on it, and agreed to the Terms of Service.

These cases make clear that the inquiry into whether a web user had "reasonable notice" of contract terms contained in a contract accessible by hyperlink depends on the "totality of the circumstances." *Feld v. Postmates, Inc.*, 442 F. Supp. 3d at 830. As such, based on the website's lack of clarity, it is obvious that the Terms of Service were not visible enough for a reasonably prudent person to see them, nor was there any assent from either Plaintiff.

**E. There Was No Mutual Assent To Terms Of Service**

Under Tennessee law, "in order for a contract to be consummated, the parties must mutually assent to the material terms. Tennessee courts have referred to this requirement as a 'meeting of the minds.' . . . The traditional common-law rule is that where mutual assent is lacking, no contract was ever formed." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528 (Tenn. 2012); *see also Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (an enforceable contract must, among other things, "result from a meeting of the minds in mutual assent to terms" of the agreement (citation omitted)). "[W]hether a meeting of the minds occurred is a question of fact." *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 807 (Tenn. Ct. App. 2015).

Additionally, earlier this year in the Middle District case of *Hazlett v. Family Dollar Stores of Tenn., Inc.*, U.S. Dist. LEXIS 31225 (2021), Judge Trauger denied a defense motion to dismiss and compel arbitration, 9 U.S.C.S. § 2, because plaintiff's declaration, if true, showed she had no reason even to know she was signing an arbitration agreement, which created a material factual dispute whether there was a meeting of the minds in mutual assent; her testimony gave rise to a question of fact whether she actually had the opportunity to read or review any part of the agreement before being asked to sign it electronically.

Here, neither Plaintiff had any reason to know that they were accepting the Terms of Service, much less agreeing to a mandatory arbitration provision. There are definitely material facts in dispute whether there was a meeting of the minds. Likewise, as in *Hazlett*, while the Defendant's records reflect that the Plaintiffs' electronic signatures were affixed to the electronic version of the arbitration provision, Plaintiffs' testimony raises a question of fact as to whether they actually had the opportunity to read or review any part of the arbitration provision before being asked to sign it electronically. *Hazlett* at 18

RVshare references that confirmation of the reservation sent to the Plaintiffs after they made purchases included a statement that Plaintiffs were bound by the Terms of Service. However, *Hazlett* shows that argument or method is also insufficient to prove assent. Indeed, in its substantive argument in its motion, RVshare cites no authority for the proposition that a person who did not agree or assent to a contract can nonetheless be roped into that contract later by a unilateral communication asserting a contract was formed. Moreover, this theory runs counter to the most basic tenets of mutual assent that a party can take an action, not agree to a contract regarding that action, and yet still be bound by that contract solely on the basis that the other party later sends a note saying so. See, e.g., *Windsor Mills*, 25 Cal. App. 3d at 992 (requiring an "outward manifestation or expression of assent" by the party). RVshare has not and cannot put forward any authority that these after-the-fact confirmations of reservation constitute mutual assent. RVshare failed to meet its burden of showing Plaintiffs had actual or constructive knowledge of the Terms of Service, including the arbitration provision, and therefore there was no mutual assent. In circumstances such as this, where there is no mutual assent, this Court cannot compel arbitration.

**F. RVshare's Exhibit C entitled "Acceptance of Terms by Plaintiffs" is a self-serving document created by the Defendants and should be disregarded by this Court**

In its Motion to Compel Arbitration, RVshare included as Exhibit 23-C, a document they themselves created to show when the Plaintiffs allegedly "accepted the TOS". This document looks to be simply a chart created by RVshare to show when the Plaintiffs pressed the buttons "AGREE & CONTINUE" and "confirm & pay" on their website. This document in no way proves what the Plaintiffs saw when they used the website, nor does it show assent by Plaintiffs in any manner. This Court should not be swayed by this self-serving internal documents/chart made in response to litigation.

20

**G. RVshare's Reliance on *Anderson* is misplaced.**

RVshare's reliance on *Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683 (M.D. Tenn. 2020) ("*Anderson I*"); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ("*Anderson II*") is misplaced. In that case, "[a]ll of [plaintiff's] arguments fall under the umbrella of unconscionability, and they focus solely on procedural, as opposed to substantive, unconscionability". *Id*. at 1273. RVshare misconstrues *Anderson* and the law regarding "browsewrap" vs. "clickwrap," and whether the agreement was procedurally or substantively unconscionable.

In *Anderson I and Anderson II*, the Terms of Use were not hidden from the consumer, and they required assent and confrontation by the user.

 

*Anderson I*                    *Anderson II*

As demonstrated above, the hyperlinks in the *Anderson* cases were prominently displayed directly above the "confirm and pay" and "place order" buttons which were required to complete a purchase. With just the single click of a mouse before placing his order, Anderson would have been able to access the Terms of Use, as well as the arbitration clause. Under these circumstances, the court cannot say that the Terms of Use and arbitration clause are procedurally unconscionable,

regardless of whether they are deemed clickwrap or clickwrap/browsewrap. *Anderson* at 1275. This is clearly distinguishable from the case at hand.

The RVshare website uses a confusing mix of clickwrap/browsewrap agreement, and the Terms of Service was not visible to Plaintiffs. The only thing brought to the user's attention and confirmed was the agreement they were over 25 with a driver license and confirmation of payment. Thus, the facts and the placement of the Terms of Service, plus the deceptively placed check box to confirm age and licensure, are very different from the *Anderson* cases and cannot be used in comparison to the case at hand.

## H. The Declaration of Thomas Klenotic Lacks Personal Knowledge about what Plaintiffs actually saw on the RVShare website.

Defendant's Motion asserts that Plaintiffs visited the website, provided personal identifying information, and consented to an agreement that included the arbitration clause. In support of this argument, Defendant attach to its Motion a Declaration from Thomas Klenotic, a Vice President of Finance[5] at RVshare, that claims to establish the aforesaid actions. There is no evidence set forth in the Declaration to support the accuracy of the "regenerated HTML representation" shown. Additionally, there are two ways that users can interact with RVshare's platform: (1) through a desktop browser; and (2) a mobile browser. This Declaration is flawed because users can view the same website differently, so Klenotic cannot attest to what each user saw. Even if the differences are only minimal, it could affect the conspicuousness of the placement and font of the Terms of Service. It is Defendant's burden to prove what the Plaintiffs saw, yet all that has been provided is a generic Declaration in which Klenotic claims to know how the RVshare website was displayed. However, Klenotic fails to state what each Plaintiff actually saw. Did the Plaintiff use Chrome, Firefox, Safari, or Edge? Did she view the website from a mobile phone, a

---

[5] Interestingly, RVShare provides the declaration of a VP of Finance on a tech issue instead of their Chief Technical Officer or their VP of Engineering.

desktop, or a tablet? It is RVshare's burden to prove such, and there is no credible evidence in the Declaration about what Plaintiffs actually saw when using the website. Thus, RVshare has failed to demonstrate a reasonably prudent user was placed on notice of its Terms of Service.

The author and the declarant either A) do not understand how RVshare's website is published, or B) are purposely misleading this Court. At all times relevant to the instant complaint, RVshare's listings utilized a "responsive" web design. This means the website's contents were displayed in a format responsive to a web browser's screen size. For instance, below are screenshots of the exact same RVshare rental initiation page. The left image is rendered on a screen that is 791 pixels wide; the right image shows the same page on a screen that is 755 pixels wide.



The above two screenshots show very different presentations, even though they are the <u>exact same website</u>.

RVshare cannot meet its burden of proving to this Court exactly <u>what</u> "agreement" was presented to either Plaintiff, if any. It provides no evidence of what type of browser Plaintiff used, or what screen resolution that browser utilized. By design, the RVshare website responds and adapts its presentation, depending on those variables. Thus, the only question in this Court's mind should be: Were Plaintiffs (reasonably prudent people) put on notice? The answer is <u>no</u>. Plaintiffs

have attested they were not on notice, and Defendant has not provided any evidence otherwise. It is Defendant's burden to do so, and it has failed to meet its burden.

## <u>CONCLUSION</u>

Defendant's motion falls woefully short of satisfying that burden because it fails to establish that Plaintiffs knew of, assented to, or consented to any agreement, let alone an arbitration provision. When the party opposing arbitration does so on the ground that no binding agreement to arbitrate exists, this Court should give the opposing party the benefit of all doubts and inferences that may arise. For the foregoing reasons, Defendant's Motion to Compel Arbitration must be denied.

Dated: August 16, 2021                    Respectfully submitted,


*/s/ James C. Bradshaw III*
James C. Bradshaw III, B.P.R. #13170
**WYATT, TARRANT & COMBS, LLP**
333 Commerce St., Suite 1050
Nashville, TN 37201
(615) 244-0020
jbradshaw@wyattfirm.com

*/s/ Cam F. Justice*
CAM F. JUSTICE, Florida Bar #119105
(Admitted *pro hac vice*)
*/s/ Adam D. Breit*
ADAM D. BREIT, Florida Bar #102541
(Admitted *pro hac vice*)
Justice Law
8551 W. Sunrise Blvd., Suite 300
Plantation, FL 33322
(954) 515-5656
justicepleadings@justiceinjurylawyer.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of August 2021, a copy of the forgoing was filed in the above-captioned action. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including:

Michael G. Abelow
Alice E. Haston
Sherrard Roe Voigt & Harbison, PLC
150 Third Avenue South
Suite 1100
Nashville, Tennessee 37201
mabelow@srvhlaw.com
ahaston@srvhlaw.com

Patrick J. Krebs (*pro hac vice*)
Daniel H. Bryan (*pro hac vice*)
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
pkrebs@taftlaw.com
dbryan@taftlaw.com

Cam J. Justice
Adam Breit
8551 W. Sunrise Blvd
Suite 300
Plantation, Florida 3332
cjustice@justiceinjurylawyer.com
abreit@justiceinjurylawyer.com

*/s/ James C. Bradshaw III*

25