# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **LESLIE SCOTT, et al.**, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) NO. 3:21-cv-00401 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| **RVSHARE LLC,** | ) MAGISTRATE JUDGE NEWBERN |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM</u>

Pending before the Court is Defendant RVshare LLC's Motion to Stay Proceedings and Compel Individual Arbitration. (Doc. No. 21). Plaintiffs filed a Response (Doc. No. 30) and Defendant replied (Doc. No. 33). For the reasons stated herein, Defendant's Motion to Compel Arbitration and Stay Proceedings will be **GRANTED**.

### I.    BACKGROUND

Plaintiffs Leslie Scott ("Scott") and Tal Becker ("Becker") (collectively "Plaintiffs") bring this purported class action against Defendant RVshare LLC ("RVshare") asserting fraud claims and violation of Tennessee and Florida consumer protection statutes.

RVshare is an online rental platform through which users can arrange to rent various types of recreational vehicles ("RVs") directly from owners. Scott used the platform on June 11, 2020, to rent an RV for a family vacation. (Doc. No. 30-1 ¶ 3). Becker used the platform on October 13, 2020, to rent an RV for vacation. (Doc. No. 30-2 ¶ 3). Both completed the booking process in order to rent their respective RVs.

The booking process requires several steps. (*See* Decl. of Thomas Klenotic, Doc. No. 23). First, users are directed to the "Begin Your Booking" page, where they provide contact information and select "Agree & Continue". Adjacent to the "Agree & Continue" button is the following language: "By clicking 'Agree & Continue,' you are agreeing to the RVshare Terms of Service, Optional Insurance Terms, Privacy Policy and to receive booking-related texts. Standard messaging rates may apply." (Doc. No. 23-1). The RVshare Terms of Service, Optional Insurance Terms, and Privacy Policy are hyperlinked and displayed in blue text. (*Id*.)



(*Id*.)

After a user has selected their rental, they must submit payment information to complete the booking. On the "Confirm & Pay" page, the following language is above and adjacent to the "Confirm & Pay" button: "By clicking on 'Confirm & Pay,' you agree to the pay the total amount shown on this page and to the RVshare Terms of Service, Optional Insurance Terms, Privacy

2

Policy, and Cancellation Policy." (Doc. No. 23-2). The RVshare Terms of Service, Optional Insurance Terms, Privacy Policy, and Cancellation Policy are hyperlinked and displayed in blue text. (*Id.*).



(*Id.*).

At the conclusion of the booking process, the user is provided with a reservation summary. The user's reservation summary reflects that the user has agreed to the Terms of Service and the RV Rental & Optional Insurance Terms on the reservation page. (Doc. No. 23-6).

3

RVshare's Terms of Service contains an arbitration clause which states, in part:

> **Any and all claims will be resolved by binding arbitration, rather than in court, except that you may assert claims on an individual basis in small claims court if they qualify. This includes any claims you assert against us, our subsidiaries, users or any companies offering products or services through us (which are beneficiaries of this arbitration agreement).**

(Doc. No. 23-5 at 29) (bold in original).

Users are informed of the existence of this provision on the first page of the Terms of Service. (*See* Doc. No. 23-5 at 1 ("**Please read this Agreement carefully, as it contains information about limitations of liability and resolution of disputes through arbitration rather than court.**") (bold in original)).

Plaintiffs each had separate problems with their rental experiences and now bring claims of fraud and violation of consumer protection statutes against RVshare. Defendant asserts that Plaintiffs consented to binding arbitration as reflected in Defendant's Terms of Service. Defendant now moves to stay the case and compel individual arbitration on all claims.

## II. LEGAL STANDARD

The question of whether Plaintiffs' claim must be arbitrated is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 et seq. The FAA "expresses a strong public policy favoring arbitration of a wide range of disputes" and provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) and 9 U.S.C. § 2).

Whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2; *Cooper*, 367 F.3d at 498; *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 477 (6th Cir. 2005). To show that the validity of the agreement to arbitrate is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id*. Therefore, the Court reviews the facts in the light most favorable to the Plaintiff to determine whether the evidence presented raises a genuine question of material fact such that a finder of fact could conclude that no valid agreement to arbitrate exists. *Id*. (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999)). Any doubts regarding arbitrability must be resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 451 (6th Cir. 2005) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)); *see also Great Earth*, 288 F.3d at 889 ("[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.").

Where a party establishes that there is a valid agreement to arbitrate the dispute, the Court must grant the motion to compel arbitration and stay or dismiss proceedings until the completion of the arbitration. *Lehman Bros.*, 394 F.3d at 451 (citing 9 U.S.C. §§ 3-4).

### III. ANALYSIS

Defendant moves to compel arbitration on all of Plaintiffs' claims. As grounds, Defendant states that Plaintiffs consented to the Terms of Service when booking their respective RVs and, as such, Plaintiffs are bound by the arbitration clause contained therein. Plaintiffs argue that they did not knowingly consent to the Terms of Service and therefore cannot be compelled to arbitrate their claims.

A.  **Choice of Law**

As a threshold matter, the Court must determine the applicable law. Defendant argues that, pursuant to the Governing Law section of the Terms of Service, the applicable law is that of the state in which each Plaintiff resides, as reflected in the information they provided Defendant when using the platform. Consequently, they state that Scott's inquiry is governed by Tennessee law and Becker's is governed by Florida law. Plaintiffs do not rebut this assertion. Accordingly, the Court will apply Tennessee law to Scott and Florida law to Becker.

B.  **Enforceability of the Agreement**

When considering a motion to compel arbitration, the Court is to consider four factors: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended for those claims to be non-arbitrable; and (4) whether, if some but not all claims are arbitrable, the case should be stayed pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Only the first factor is at issue here.

Plaintiffs contend that the arbitration clause is unenforceable because they did not assent to the Terms of Service on Defendant's website. There are two primary types of online agreement: clickwrap and browsewrap. A clickwrap agreement is one that "require[s] the user to manifest assent to the terms by clicking on an icon." *Traton News, LLC v. Traton Corp.*, 528 F.App'x. 525, 526 n.1 (6th Cir. 2013). Conversely, "[a] browsewrap agreement discloses terms on a website that offers a product or service to the user, and the user assents by visiting the website to purchase the product or enroll in the service." *Id*. Plaintiffs contend that whether the Terms of Service were presented as a clickwrap or a browsewrap agreement, they did not consent.

1. <u>Enforceability as to Becker: Florida Law</u>

Courts examining these types of agreements under Florida law find that in order to be a clickwrap agreement, the user must be required to "click a box to acknowledge that they have read [the] terms and conditions." *MetroPCS Communications, Inc., v. Porter*, 273 So.3d 1025, 1028 (Fla. 3rd DCA 2018) (internal quotations omitted). By contrast, "[a] browsewrap agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process." *Id*. Under this standard, the agreement Becker confronted on RVshare's website is a browsewrap agreement. Becker was presented with the Terms of Service but did not have to affirmatively check a box acknowledging such.

The enforceability of browsewrap agreements under Florida law hinges on proper notice and the opportunity of the user to review the agreement. "Browsewrap agreements have only been enforced when the hyperlink to the terms and conditions is conspicuous enough to place the user on inquiry notice." *Vitacost.com, Inc. v. McCants*, 210 So.3d 761, 765 (Fla. 4th DCA 2017) (internal quotation omitted). The Court finds that the hyperlink in this case was sufficient under this standard.

In reserving his RV, Becker was twice confronted with the Terms of Service, first on the booking page and again on the confirmation page. Both times, text either above or adjacent to the button Becker had to click clearly stated that by doing so, Becker was agreeing to the Terms of Service. If Becker had clicked the hyperlink, he would have been clearly informed of the existence of the arbitration provision on the first page. *See MetroPCS,* 273 So. 3d at 1029 ("A person has no

right to shut his eyes or ears to avoid information, and then say he has no notice.") (quoting *Sapp v. Warner*, 105 Fla. 245 (Fla. 1932)).

Accordingly, the Court finds that Becker was provided adequate notice of the Terms of Service and is bound by its terms. The arbitration clause is enforceable as to Becker, and he will be compelled to arbitrate individually his claims.

2. Enforceability as to Scott: Tennessee Law

The question of enforceability of either type of agreement has not been clearly examined under Tennessee law. Even so, whether Scott was confronted with a clickwrap agreement or a browsewrap agreement, the Court cannot ignore that he was twice presented with the Terms of Service in clear text above or adjacent to the icon, and which would have only required a click of the mouse to open.

Scott does not point to any Tennessee authority to support his argument that the agreement is unenforceable. However, even viewing the Terms of Service as a browsewrap agreement and examining it under the most stringent standards cited by Plaintiffs, all of which state that a browsewrap agreement is enforceable when the consumer has adequate notice, this agreement is enforceable. Additionally, Tennessee principles of contract formation, while not clearly set forth for browsewrap agreements, are consistent with the principles used by Florida courts. *See 84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) ("It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents."); *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 785 (Tenn. Ct. App. 2010) ("The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." (internal

citations omitted)); *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 676 (Tenn. Ct. App. 2007) ("One who signs a contract cannot later plead ignorance of its contents if there was an opportunity to read it before signing.") Applying these principles, the Court is not persuaded that Scott did not have adequate notice. Accordingly, Court finds that the arbitration clause is enforceable as to Scott and he will be compelled to individually arbitrate his claims.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiffs have not raised a genuine issue of material fact regarding the validity of the arbitration clause. Accordingly, the Motion to Compel Arbitration (Doc. No. 21) is **GRANTED**. *Lehman Bros.*, 394 F.3d at 451 (where a party establishes that there is a valid agreement to arbitrate the dispute, the Court must grant the motion to compel arbitration).

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE